[L. A. No. 2448. In Bank.—March 30, 1910.]

## PROVIDENCE JEWELRY COMPANY (a Corporation)¸ Appellant, v. A. NAGEL, Respondent.

ACTION FOR GOODS SOLD — INSUFFICIENCY OF EVIDENCE TO SUPPORT ANSWER—REVIEW UPON APPEAL.—In an action for goods sold and delivered, where the answer denied the sale, and pleaded a separate and distinct answer, upon appeal from a judgment for the defendant, where the record shows that all the evidence was admissible under the denial of the answer, under specifications of insufficiency of the evidence to sustain the answer, an assignment of insufficiency thereof to sustain the separate and distinct answer, will not be reviewed or passed upon.

ID.—SUPPORT OF FINDINGS AGAINST SALE—COMMISSION.—*Held,* that it cannot be said that there was not sufficient testimony to justify the findings of the court that the transaction between the parties did not amount to a sale, or pass the title, but that the delivery was upon commission.

ID.—AMBIGUOUS WRITTEN ORDER — EVIDENCE — REPRESENTATION BY PLAINTIFF'S AGENT.—Where a written order presented by plaintiff's agent to the defendant for signature, seemed upon its face not to import an absolute sale, but was so artfully worded that it might be a trap for the unwary, the evidence of the defendant was admissible to show that when the signature was asked, the plaintiff's agent represented to defendant that the delivery under the order was upon commission.

ID.—EVIDENCE NOT VARYING OR CONTRADICTING WRITING—CIRCUMSTANCES SHOWING ESTOPPEL.—Such evidence of defendant as to the circumstances under which the order was signed, was not objectionable as varying or contradicting the writing, but tends to show that it was not the instrument of defendant, and that defendant's signature was procured under such circumstances by the plaintiff as estops the plaintiff from using it or relying upon it as against the defendant.

ID.—ABSENCE OF CONTRACT—MINDS OF PARTIES NOT MEETING.—The evidence for defendant was sufficient to show that the minds of the

CLVII Cal.—32

parties did not meet, and that there was no contract between them upon the terms of the written order.

ID.—FRAUD VITIATING CONTRACT.—It also seems clear that a fraud was practiced upon defendant by the representative of the plaintiff, and that defendant's signature to the order was procured by misrepresentation and fraud sufficient to vitiate the instrument. The defendant had the right to rely on the representation of plaintiff's agent that the written instrument presented for signature was but an order to send the goods for sale on commission, and plaintiff in an action between the original parties is not in position to say that having practiced this fraud, defendant must still be bound because he did not mistrust plaintiff and signed without an independent examination.

ID.—INAPPLICABLE RULE.—The rule that the injured party must show that he has availed himself of the means of information existing at the time of the transaction, before he will be heard to say that he was deceived by the misrepresentation of the other party, is not to be carried to the extent of holding that under the circumstances of this case defendant should be bound by a written agreement at variance with the terms of the actual agreement and which he was induced to sign by misrepresentation upon the part of the plaintiff.

ID.—SUFFICIENT EVIDENCE OF FRAUD.—*Held*, that it cannot be said that the showing of fraud in this case was not sufficiently clear and convincing to sustain the effect given thereto by the trial court.

APPEAL from a judgment of the Superior Court of Orange County. Z. B. West, Judge.

The facts are stated in the opinion of the court.

F. C. Spencer, for Appellant.

Tipton & Cailor, for Respondent.

THE COURT.—The district court of appeal for the second district having failed to agree on a decision in this case it was certified to this court for determination. The following opinion written by Justice Allen of that court and concurred in by Justice Taggart, is approved and adopted as the opinion of this court:—

"Appeal by plaintiff upon a bill of exceptions from a judgment rendered in favor of defendant.

"The action was one for the price and value of merchandise of the market value of $379.30 alleged to have been sold and delivered by plaintiff to defendant. The answer denies the

sale or the acceptance of the goods upon any promise or agreement to pay the said sum of money or any price or at all.

"We forbear any discussion of questions raised as to the sufficiency of the evidence to support certain averments in an answer denominated a separate and distinct answer, for the reason that all of the testimony adduced upon the trial, the admissibility or the effect of which is questioned by the specifications, was admissible under the general issue raised by the denial. (*Wendling etc. Co.* v. *Glenwood etc. Co.*, 153 Cal. 411, [95 Pac. 1029].)

"Upon the trial of the action the court found that the allegations in the plaintiff's complaint which averred the sale and delivery of the goods under a contract of purchase were untrue. Appellant specifies as error the incorrectness of this finding. The record discloses that upon the trial plaintiff offered in evidence an order received by plaintiff for the shipment of the goods mentioned. The essential portions of this order were as follows:

" 'Following is a list of goods for our $379.30 order:

" 'On condition that the purchaser complies with all the terms of this order at the time and in the manner stated hereon, promptly meets any obligations entered into with the Providence Jewelry Company, uses ordinary diligence in the sale of these goods, will sell nothing at a less profit than is usually charged on jewelry, and will make out and send to the Providence Jewelry Company, by mail quarterly, a report showing the goods on hand, at which time he will take advantage of the exchange privilege herein set forth, the Providence Jewelry Company guarantees that the gross profits from the sale of the goods purchased herein shall be fifty per cent of the amount of this order, and if the profits do not amount to fifty per cent as above provided, the Providence Jewelry Company will buy back and pay the original invoice price for all goods remaining on hand unsold, or will pay by Chicago or New York draft a sufficient amount to make up the deficiency, at the expiration of this agreement. Terms of payment: Six per cent discount for cash in fifteen days, or one fourth of the amount due in six months, one fourth in eight months, one fourth in ten months, one fourth in twelve months, without interest. The above terms of credit will only be allowed if acceptances to our order are given within fifteen

days from date of invoice. Otherwise terms are net cash 30 days. Same terms shall apply on all re-orders for these goods.' Here follows an itemized statement of the goods, with the catalogue price, occupying several pages of manuscript, followed by the following:

" 'The Providence Jewelry Co. will replace free of charge any article not wearing satisfactorily. Exchange privilege. Any goods contained in this order may be exchanged for different styles, patterns or other articles purchased in this order, any time within three years and after compliance with terms of settlement. The Providence Jewelry Co. will send purchaser of this order 500 advertising cards, 500 commutation cards and 100 silver spoons, wild-rose pattern, extra plate, for advertising purposes to be distributed as follows: Purchaser shall furnish names of 100 persons, to each of whom the Providence Jewelry Company will mail three advertising cards and an order on purchaser for one spoon; each order when properly filled out with the name and address of three persons, to each of whom the holder of the order has delivered an advertising card, shall be good for one spoon at purchaser's store. Additional spoons will be given by purchaser with every $10 purchase of merchandise at his store. Purchaser agrees to account for spoons by sending all receipted orders to the Providence Jewelry Co. Date Feb. 1, 1907.

" 'Providence Jewelry Co.,
        " 'Rock Island, Ill.
" 'Gentlemen:
        " 'On your approval of this order deliver to us at your earliest convenience F. O. B. transportation companies, either at distributing point or at factory point, the above described goods, and no others, on the terms and conditions herein set forth, and no others, all of which I have read and found complete and satisfactory.
                " '(Signed)    A. Nagel

" 'Providence Jewelry Co. will send their bond in the sum of $300. to the merchant before he commences selling their goods.'

"It further appears in evidence upon the part of plaintiff that under this order the goods were shipped to defendant, and the bond of $300 conditioned upon the faithful performance of

the contract was forwarded by plaintiff on February 7th; that on February 21st Nagel notified the company that the jewelry had arrived; that he had sent the names of the families some days ago; that he was in a dilemma as to whether he had made a mistake, and, 'if so, I am in for it.' Thereafter plaintiff wrote defendant a letter the effect of which was to notify him that plaintiff would insist upon the contract as one of sale. It further appears that the acceptances mentioned in the order· were forwarded to Nagel, who, in reply, notified the plaintiff that he refused to sign the acceptances.

"There was evidence offered upon the part of defendant tending to show that this written order offered in evidence by plaintiff was signed under the following circumstances: That the representative of plaintiff called at defendant's place of business and proffered to put in a stock of jewelry in a case about four feet long; that he would be around every three months and check up the goods that had been sold by defendant and replace them with new goods; that he would send a case so that when the defendant got ready to turn the jewelry over, in case he did not want to handle the jewelry, they could pay him back the freight; that he was induced to sign the order because the representative told him he had nothing to lose in this proposition, that plaintiff carried the stock; that the representative had no samples of the goods, nothing but a catalogue; that this representative made the selection of all the goods included in the order and inserted the list in the order after it was signed and delivered; that when defendant received the goods he did not open the package, but shipped it shortly thereafter by express to the plaintiff, who refused to receive it from the express company, in whose hands it still remains subject to plaintiff's order. This he did for the reason that he could see from the correspondence that they claimed it was a sale instead of a commission proposition; that when they sent him the four acceptances he then discovered that it was an attempt to effect a sale; that he also returned the guaranty bond. Another witness in behalf of defendant, who was present, testified that the representative of plaintiff told the defendant that if he did not want to keep the business up he could return the goods; that the case in which the goods were held and the goods all would belong to plaintiff· and that Nagel was to pay only for just what he sold; that the repre-

sentative was to come around every three months collecting
and everything that was tarnished he would replace with new
goods; that the representative picked out the goods and said if
they didn't sell well they would make a change, because they
wanted the goods sold; that on these representations he handed
the paper introduced by plaintiff as the order, but then incom-
plete, to Nagel and told him to sign it so that they would ship
the goods, and they would put them in and it would be prac-
tically the same as on commission; that Nagel signed the paper
and handed it back to him, "and I don't think he had time to
read it; he just wrote his name across the back and handed it to
him."

"We are of opinion that it cannot be said that there was no
testimony to justify the findings of the court that this trans-
action did not amount to a sale. The written order upon its
face would indicate that an absolute sale was not intended; in
fact, it is so adroitly worded that the true intent can scarcely
be gathered from the terms of the instrument. It is such a
paper as might well trap the unwary, and when its peculiar
terms are considered in connection with the testimony offered
by the defendant, that it was executed under a direct repre-
sentation and statement that the title to the goods did not pass
and that they were to be received by defendant and sold upon
commission, there is sufficient to warrant the finding of the
court.

"The objections interposed by plaintiff to oral testimony in
relation to the circumstances under which the order was signed
were not well taken. As said in *Maxson* v. *Llewelyn*, 122 Cal.
199, [54 Pac. 734]: The receipt of such testimony is not to
vary or contradict the writing, 'but it goes upon the idea that
the writing offered in evidence was not the instrument of the
party whose name is signed to it; that it was procured under
such circumstances by the other side as estops that side from
using it or relying on its contents; not that it may be contra-
dicted by oral testimony, but that it may be shown by such
testimony that it cannot be lawfully used against the party
whose name is signed to it.' The testimony of the defendant's
witnesses which was accepted by the court as true clearly indi-
cates that the minds of the parties did not meet; that there
was in fact no contract between them as appears in the written
order, and that the same was executed under such circum-

stances as would estop plaintiff from claiming any benefit thereunder. It seems clear that a fraud was practiced upon defendant by this representative of plaintiff, and that his signature to the order was procured by misrepresentation and fraud sufficient to vitiate the instrument. The defendant had a right to rely upon the representations of plaintiff's agent that the written instrument presented for signature was but an order to send the goods for sale on commission and plaintiff, in an action between the original parties, is not in a position to say that, having practiced this fraud, defendant must still be bound because he did not distrust plaintiff and signed without an independent examination. We do not think the rule, that the injured party must show that he has availed himself of the means of information existing at the time of the transaction before he will be heard to say that he was deceived by the misrepresentations of the other party, should be carried to the extent of holding that, under the circumstances of this case, defendant should be bound by a written instrument at variance with the terms of the actual agreement, and which he was induced to sign by misrepresentation upon the part of plaintiff, (*Los Angeles etc. Co.* v. *New Liverpool Salt Co.*, 150 Cal. 27, [87 Pac. 1029].) We are not prepared to say that the evidence showing fraud in this case was not clear and convincing. The trial court appears to have given it that effect and with its judgment we are content.

"Judgment affirmed."

Sloss, J., dissented.

Beatty, C. J., does not participate in the foregoing.