DUNIWAY, J.
 

 Defendant appeals from a summary judgment. It asserts that its affidavits show certain triable issues of fact, and that therefore the court should not have granted the judgment. We find that the court correctly determined that there was no triable issue of fact, but hold that the judgment should be modified in one respect.
 

 Code of Civil Procedure, section 437e, requires that in the affidavit(s) on motion for summary judgment “the facts . . . shall be set forth with particularity. ...” This section has been on the books since 1933, although its availability in various types of actions has been widened in the intervening years. It “provides a method by which . . . the court may determine whether the triable issues apparently raised by . . . [the pleadings] are real or merely the product of adept pleading. The question therefore is . . . whether . . . [defendant] can show that the answer is not an attempt ‘to use formal pleadings as means to delay the recovery of just demands. ’ ”
 
 (Coyne
 
 v.
 
 Krempels,
 
 36 Cal.2d 257, 262 [223 P.2d 244].) It has been said that the statute was “designed to protect the rights of the plaintiff . . . from the
 
 *703
 
 harassing delays that ordinarily accompany evasive, spurious and meritless defenses. It likewise promotes and protects the administration of justice ...”
 
 (Bank of American. Oil Well Supply Co.,
 
 12 Cal.App.2d 265, 270 [55 P.2d 885].) “The obvious purpose ... is to expedite litigation by avoiding needless trials.”
 
 (Cone
 
 v.
 
 Union Oil Co.,
 
 129 Cal.App.2d 558, 562 [277 P.2d 464].)
 

 Of course this does not mean that a motion for a summary judgment is a substitute for a trial. Its purpose is to discover whether there is anything to try—“issue finding,” not “issue determination.”
 
 (Walsh
 
 v.
 
 Walsh,
 
 18 Cal.2d 439, 441 [116 P.2d 62].) It anticipated by 25 years the discovery sections recently added to the Code of Civil Procedure, sections 2016-2035. Their addition to our law should make the summary judgment procedure more useful than it has been heretofore. When discovery, properly used, makes it “perfectly plain that there is no substantial issue to be tried”
 
 (Walsh
 
 v.
 
 Walsh, supra,
 
 at p. 442), section 437c, Code of Civil Procedure, is available for prompt disposition of the case. In the present case, the plaintiff properly relies in part on defendant’s sworn answers to plaintiff’s requests for admissions, under Code of Civil Procedure, section 2033.
 

 Because summary judgment procedure is not a substitute for a trial, our Supreme Court has held that it is drastic and to be used with caution, that the facts stated in the affidavits opposing the motion must be accepted as true, that such affidavits must be liberally construed and need not necessarily be composed wholly of strictly evidentiary facts, and that those of the moving party must be strictly construed.
 
 (Walsh
 
 v.
 
 Walsh, supra,
 
 18 Cal.2d 439, 441-442;
 
 Eagle Oil & Ref. Co.
 
 v.
 
 Prentice,
 
 19 Cal.2d 553, 555-556 [122 P.2d 264] ;
 
 Hardy
 
 v.
 
 Hardy,
 
 23 Cal.2d 244 [143 P.2d 701];
 
 Arnold
 
 v.
 
 Hibernia S. & L. Soc.,
 
 23 Cal.2d 741 [146 P.2d 684];
 
 Gardner
 
 v.
 
 Jonathan Club,
 
 35 Cal.2d 343, 347 [217 P.2d 961] ;
 
 Coyne
 
 v.
 
 Krempels, supra,
 
 36 Cal.2d 257, 260-261, 263-264;
 
 California Lettuce Growers, Inc.
 
 v.
 
 Union Sugar Co.,
 
 45 Cal.2d 474, 483 [289 P.2d 785, 49 A.L.R.2d 496] ;
 
 Desny
 
 v.
 
 Wilder,
 
 46 Cal.2d 715, 725-726 [299 P.2d 257].) These rules, heavily relied upon by defendant here, do not require us either to disregard facts stated in the plaintiff’s affidavits that are not contradicted, or to read into the defendant’s affidavit facts that are not stated therein. Our task is to determine, from the affidavits, whether there is a real factual issue to be tried.
 
 *704
 

 (Estate of Kelly,
 
 178 Cal.App.2d 24, 29-30 [2 Cal.Rptr. 634].) Defendant’s affidavit is not a model of what an affidavit under Code of Civil Procedure, section 437e, should be. It seems to have been drawn more with an eye to the foregoing rules than for the purpose of making an accurate and factual disclosure of a triable issue.
 

 We recite the facts as shown by the affidavits of the parties and the written answers of defendant to plaintiff’s request for admissions, which defendant incorporates by reference in its affidavit.
 

 Under date of March 7, 1957, defendant sent to plaintiff a letter reading as follows:
 

 “Confirming our phone conversation of today, March 7, 1957, please accept this letter as authorization to ship equipment and tooling as per attached schedule, Items 1 thru 23, inclusive, on a thirty (30) day trial basis, to the Remler Company, 2101 Bryant St., San Francisco.
 

 “It is agreed that if at the end of the thirty (30) day trial period the Remler Company decides against the purchase of this equipment, it will be returned to the Wales-Strippit Corporation, South Gate, California, at no charge to the Remler Company. ’
 
 ’
 

 Attached were two typewritten pages, listing the equipment and tooling by catalogue numbers, quantities and brief descriptions. Defendant sent no other writing to plaintiff thereafter until July 22, 1957.
 

 Plaintiff, which does business under the name of WalesStrippit Corporation, avers that it shipped the equipment and tooling to defendant from March 8 to April 10. Defendant avers that some of the goods were received on “March 8, 1957 that thereafter for a period of more than 30 days, namely, to April 10, 1957, other components were received.” It is thus undisputed that all components shipped were received by April 10.
 

 Defendant then says “that the total content of all of said shipments did not provide said Defendant with all of the equipment and tooling set forth on” the schedule attached to its letter of March 7. It also says that on April 1, which was before shipments were completed, its representatives told plaintiff’s representative that “certain parts” of the equipment had not been received, and that plaintiff then said that if defendant decided to buy, the proper equipment would be forwarded. The affidavit adopts the answers to requests for
 
 *705
 
 admissions, and from the latter it appears that only the following items were not received:
 

 Invoice No. Item Description Price 06294 26 Punch Tip $ 23.40 5
 
 1
 
 51 Die 23.92
 
 9 9
 
 56 Die 23.92
 
 99
 
 57 Die 23.92 06146 8 P. & Str. Guide Assy. 14.04
 
 9 9
 
 10
 
 9)9999 99 99
 
 14.04 Total price $123.24
 

 This is out of a total price of $10,778.73. The schedule called for 36 punch tips of the type of item 26; for 36 dies of the types of items 51, 56, and 57, and for 36 assemblies of the types of items 8 and 10. Nowhere does defendant allege that the lack of these items in any way affected the utility of the equipment to defendant.
 

 Defendant also avers that “some of the tooling and equipment that was received was in a used or damaged condition when received.” This allegation would be bad even in a pleading. Nowhere is there a specification as to which items, or any statement that these facts in any way affected the utility of the equipment to defendant. Defendant’s statement, for all that appears, could refer to two dies out of 71, priced at $6.24 each, or a total of $12.48. Defendant does not say that it ever objected on these grounds, or gave plaintiff any notice of the defects. So far as appears nothing else was ever said about these matters by defendant, except for the April 1 conversation.
 

 To endeavor to erect these minor discrepancies into triable issues of fact requiring reversal of the judgment, as defendant does, is to make a mockery of the summary judgment procedure. It is a maxim as old as our jurisprudence that “the law disregards trifles.” (Civ. Code, § 3533.)
 

 Plaintiff’s affidavit states “That all of the equipment and tooling described in the foregoing invoices was received by the defendant on or about the 10th day of April, 1957, was assembled in the place of business of said defendant and was used by said defendant and remained in the possession of said defendant and no complaint or objection was made thereto,” until July 22, 1957.
 

 Defendant says “that the assembly and installation of such equipment as was received in Defendant’s plant was made by or on behalf of the Plaintiff herein and not by or on behalf
 
 *706
 
 of the Defendant.” Defendant “denies” that it “accepted” the invoices that were issued by plaintiff when shipments were made, but does not state that it rejected them, or that it ever communicated such lack of acceptance or any rejection to plaintiff. Plaintiff’s affidavit alleges, as to each shipment made, that “the property described therein [in the invoice] was shipped to the defendant and received by said defendant, and said defendant never objected to the description of the material described therein nor the prices or terms thereof.” Nowhere is this denied; what has been heretofore set forth cannot be tortured into such denial.
 

 The other material parts of defendant’s affidavit are: “that at no time did Bemler decide to purchase said equipment and at no time was the proper equipment as specified forwarded to Bemler. There was never at any time any writing or conversation in which it was agreed that title to the tooling and equipment would pass to Bemler at the conclusion of any trial period; to the contrary, it was agreed that at the conclusion of any trial period Bemler should determine whether or not it wanted to purchase the tooling and equipment. Confirmation of this understanding and agreement is found in several conversations had between your affiant and Mr. Lamb, representing the Plaintiff and Cross-Defendant herein, wherein Mr. Lamb inquired in substance whether Bemler had decided to purchase the tooling and equipment and was told that no such decision had been made.
 

 “That no purchase order was ever made or issued verbally [sic] or in writing by or on behalf of Bemler; that after April 10, 1957, your affiant had several conversations on the telephone and in person with Mr. Elmer Lamb, who was representing the Plaintiff and Cross-Defendant in connection with this transaction, wherein in substance Mr. Lamb inquired whether any decision had been made with reference to the purchase of the equipment, and Mr. Lamb was told by your affiant that no decision to purchase said equipment had been made and that if and when any such decision were made it would be communicated to Mr. Lamb or Mr. Bamberger; that no decision to purchase said equipment was ever made or communicated to anyone acting on behalf of the Plaintiff and Cross-Defendant herein; that, to the contrary, on July 22, 1957, your affiant wrote the letter of that date, a copy of which is attached to the Defendant’s answer to request for admissions ...”
 

 The letter reads: “After due consideration and extensive
 
 *707
 
 experimentation, it has been decided that the Wales Sheet Metal Fabricator, Model 10AA, now on loan trial basis to Remler Company, is not suitable for our type of manufacturing. Therefore, we are at present preparing this equipment for return to your Los Angeles plant.
 

 “We sincerely appreciate the opportunity to have tried this equipment and regret that it does not meet with our requirements. ’ ’
 

 The only bona fide question that we can dredge out of this ambiguous and conclusionary material is this: Would parol evidence be admissible to show that the parties agreed that no title would pass, and no sale would be completed, until defendant determined to buy the equipment, regardless of how long defendant kept it? We note that the alleged conversations with Mr. Lamb all occurred after the goods had been received by defendant. We think that these conversations are of little, if any, help to defendant. But under .the decision of the Supreme Court in
 
 Walsh
 
 v.
 
 Walsh, supra,
 
 18 Cal.2d 439, we must examine the March 7, 1957, letter, to see whether parol evidence would be admissible in support of the conclusions stated in the affidavit that “there was never . . . any writing ... in which it was agreed that title . . . would pass to Remler at the conclusion of any trial period,” and that “it was agreed that at the conclusion of any trial period Remler should determine whether or not it wanted to purchase the tooling and equipment.” Under defendant’s theory, the trial period lasted 103 days after all tooling and equipment was received on April 10. Defendant states that plaintiff’s affidavit does not show when the equipment was assembled, but defendant’s letter does not purport to make the 30 days run from the date of the
 
 assembly
 
 of the equipment, and it is undisputed—indeed, admitted—that it was
 
 received
 
 by April 10.
 

 Defendant’s letter of March 7 is an offer for a type of contract to sell, commonly known as a “sale on approval,” or a “sale on trial,” accepted by shipment of the goods by plaintiff. Volume 2, Williston on Sales, revised edition, section 270, page 30, says: “It is evidently possible for the parties to agree that the buyer shall temporarily take the goods into his possession to see whether they are satisfactory to him, and that if they are not he may refuse to become owner. It is clear also that the same object may be attained by an agreement that the property shall pass to the buyer on delivery,
 
 *708
 
 but that he may return the goods if they are unsatisfactory. The first kind of bargain is called in the Sales Act a sale ‘on approval,’ or, ‘on trial,’ or, ‘on satisfaction.’ The second kind is called a bargain ‘for sale, or return.’ It is immaterial, however, what language the parties use; their intention in the matter must be sought.” Here, the intention is clearly manifested—“if at the end of the thirty (30) day trial period the Remler Company decides against the purchase of this equipment, it will be returned ... at no charge to the Remler Company.” The letter also authorizes shipment to Remler “on a thirty (30) day trial basis.” The shipment of the goods constituted an acceptance by plaintiff and the contract thereby became complete, subject to termination by Remler, as shown below. (Civ. Code, §§1721 subds. (1) and (3), 1723, 1729, 1565, subd. 3, 1581,1584,1589, 1619,1620.)
 

 Civil Code, section 1739, (section 19 of the Uniform Sales Act) provides that, “unless a different intention appears . . . Rule 3. . . . (2) When goods are delivered to the buyer on approval or on trial or on satisfaction, or other similar terms, the property therein passes to the buyer-
 

 “(a) When he signifies his approval or acceptance to the seller or does any other act adopting the transaction;
 

 “(b) If he does not signify his approval or acceptance to the seller, but retains the goods without giving notice of rejection, then, if a time has been fixed for the return of the goods, on the expiration of such time ...” Williston comments on this provision as follows: “In a sale on approval if the buyer fails to signify disapproval within a proper time, it has been said that this is not necessarily acceptance, though it may be evidence of it. Logically it is true that retention of the goods may be caused by something other than assent to become owner of them, but it seems that the seller is justified in assuming that such retention means assent. If this is true the fact that the buyer does not mean to indicate assent is immaterial. Moreover, the buyer has no right to the retention .of the goods, except on the assumption that he elects to become owner of them; and a rule of wide application forbids one who can rightfully do an act on only one theory to assert for his own advantage that the act was done wrongfully. It seems desirable also, from a business standpoint, to compel the buyer to take the goods if he retains them beyond the permitted period.
 
 The Sales Act, therefore, makes an absolute rule.
 
 Apart from statute also, this is the rule by the weight of judicial authority.
 

 
 *709
 

 “Unless the contract provides otherwise, it devolves upon the buyer to give notice that he does not accept the goods either by returning them or otherwise.”
 
 (2 Williston on Sales, rev. ed., § 272, pp. 36-38; emphasis added.)
 

 It therefore devolved upon defendant to notify plaintiff of its decision 11 against the purchase,” or to return the equipment, within a reasonable time after the end of the 30 day period, and, when it failed to do so, the sale was complete. Up to that time, as Williston states (vol. 2, p. 38), defendant could “refuse . . . approval or elect to return goods for any reason or without any good reason.” But thereafter it could not.
 
 (Dinsmore
 
 v.
 
 Rice,
 
 128 Md. 209 [97 A. 537] ;
 
 R. A. Jones & Co., Inc.
 
 v.
 
 Green Bros. Co.,
 
 289 Mass. 50 [193 N.E. 582] ;
 
 Columbia Weighing Mach. Co.
 
 v.
 
 Smith,
 
 26 Ohio App. 321 [159 N.E. 855].) The cases indicate that the buyer had a reasonable time after the expiration of the 30 days in which to notify the seller of his election not to buy.
 
 (Fox
 
 v.
 
 Proctor,
 
 160 App.Div. 712 [145 N.Y.S. 709].) And it has been held that 25 days is an unreasonable time where the contract provided for 30 days’ trial.
 
 (R. A. Jones & Co., Inc.
 
 v.
 
 Green Bros. Co., supra,
 
 289 Mass. 50 [193 N.E. 582].) We think that the delay on defendant’s part in this ease is unreasonable as a matter of law. Title having passed, plaintiff was entitled to his action for the price. (Civ. Code, § 1783.)
 

 Defendant contends, however, that a “different intention” (Civ. Code, § 1739) has been made to appear by its affidavit. In making this contention, however, it overlooks the parol evidence rule (Civ. Code, § 1625; Code Civ. Proc., § 1856). It is too well settled to require citation of authority that the rule is one of substantive law, not a true rule of evidence. (See Deering’s Annotated Code Civ. Proc., § 1856, note 5, p. 814.) The rule applies to contracts to sell, as it does to other contracts.
 
 (Pacific States Securities Co.
 
 v.
 
 Steiner,
 
 192 Cal. 376 [220 P. 304] ;
 
 Ferguson
 
 v.
 
 Koch,
 
 204 Cal. 342, 346-347 [268 P. 342] ;
 
 Calpetro Producers Syndicate
 
 v.
 
 C. M. Woods Co.,
 
 206 Cal. 246, 251-252 [274 P. 65].) If a contract is partly written and partly oral, parol evidence is necessarily admissible to establish the parts of it that are oral; but even in such a case, parol evidence is not admissible to contradict the plain terms of that part of the contract that is set forth in the writing.
 
 (Pierce
 
 v.
 
 Edwards,
 
 150 Cal. 650, 654 [89 P. 600] ;
 
 Phillips
 
 v.
 
 Mathews,
 
 90 Cal.App.2d 161, 165 [202 P.2d 798] ;
 
 Keeler
 
 v.
 
 Murphy,
 
 117 Cal.App. 386, 391-392 [3 P.2d 950] ;
 
 Sivers
 
 v.
 
 Sivers,
 
 97 Cal. 518, 521 [32 P. 571];
 
 Sorenson
 
 v.
 
 *710
 

 Commercial Credit Co.,
 
 16 Cal.App.2d 71, 74 [60 P.2d 169];
 
 Bowman
 
 v.
 
 Santa Clara County,
 
 153 Cal.App.2d 707, 711-712 [315 P.2d 67] ;
 
 Mangini
 
 v.
 
 Wolfschmidt, Ltd.,
 
 165 Cal.App. 2d 192, 199 [331 P.2d 728].) Many more eases could be cited to the same effect.
 

 Moreover, there is a presumption that, where a document “ ‘ . . . imports upon its face to be a complete expression of the whole agreement—that is, contains such language as imports a complete legal obligation—it is to be presumed that the parties have introduced into it every material item and term; and parol evidence cannot be admitted to add another term to the agreement, although the writing contains nothing on the particular one to which the parol evidence is directed.” ’ ”
 
 (Sorenson
 
 v.
 
 Commercial Credit Co., supra,
 
 16 Cal.App.2d 71, 75.) We think defendant’s March 7 letter, together with the enclosed schedule, falls into this category, especially in view of the policy of the sales act as laid down by Williston,
 
 supra.
 

 “ The rule that prior or contemporaneous negotiations cannot be used to contradict, add to or vary a written contract, applies not only to the letter of the written document, but also to its legal effect.”
 
 (Standard Box Co.
 
 v.
 
 Mutual Biscuit Co.,
 
 10 Cal.App. 746, 751 [103 P. 938] ;
 
 Peterson
 
 v.
 
 Chaix,
 
 5 Cal.App. 525 [90 P. 948] ;
 
 Davis
 
 v.
 
 Stanislaus County Farmers Union,
 
 72 Cal.App. 698, 703 [238 P. 95] ;
 
 Taylor
 
 v.
 
 Continental Southern Corp.,
 
 131 Cal.App.2d 267, 280 [280 P.2d 514] ;
 
 Calpetro Producers Syndicate
 
 v.
 
 C. M. Woods Co., supra,
 
 206 Cal. 246, 252.) What defendant seeks is not to interpret or explain its letter, but to contradict its plain terms and legal effect. The alleged agreement stated in defendant’s affidavit was necessarily oral, as it is admitted that there was no other writing.. It is clearly inconsistent with the express requirement that the defendant was to decide against the purchase within a reasonable time after the 30-day trial period and then, not many weeks later, return the equipment. The case of
 
 Providence Jewelry Co.
 
 v.
 
 Nagel,
 
 157 Cal. 497 [108 P. 312], relied on by defendant, is clearly distinguishable on its facts. The writing in that case was internally self-contradictory, and signature to it was obtained by fraud. Since this is the sole substantial basis on which defendant seeks reversal, the judgment should be affirmed. If there were any other material facts occurring when the contract was made that might give rise to a different interpretation from that stated in defendant’s own
 
 *711
 
 letter, defendant should have stated them in its affidavit. The contract is not ambiguous on its face, as the contract was in
 
 Walsh
 
 v. Walsh,
 
 supra,
 
 18 Cal.2d 439. Any other objections that defendant may have had were waived by its admitted failure to communicate them to plaintiff.
 
 (Hind
 
 v.
 
 Oriental Products Co., Inc.,
 
 195 Cal. 655, 663 [235 P. 438].)
 

 However, the judgment should be reduced by $123.24, the price of the six items not delivered. Plaintiff having elected to proceed to summary judgment in the face of defendant’s direct allegation that these items were not delivered, is not entitled to judgment for their price. (Code Civ. Proc., § 437c, last paragraph;
 
 Bank of America
 
 v.
 
 Oil Well Supply Co., supra,
 
 12 Cal.App.2d 265, 271.)
 

 The judgment is modified by reducing the principal amount thereof from $10,778.73 to $10,655.49 and the amount of interest specified thereon from $761.21 to $751.38. In all other aspects the judgment is affirmed. Respondent shall recover its costs on appeal.
 

 Bray, P. J., and Tobriner, J., concurred.
 

 A petition for a rehearing was denied May 11, 1960, and appellant’s petition for a hearing by the Supreme Court was denied June 8, 1960. Traynor, J., and Peters, J., were of the opinion that the petition should be granted.