76 Cal.Rptr. 328]

[Civ. No. 32886.    Second Dist., Div. One.    Mar. 24, 1969.]

EXCHEQUER ACCEPTANCE CORPORATION, Cross-complainant and Respondent, v. KENNETH W. ALEX-ANDER et al., Cross-defendants and Appellants.

-MacMahon, Nelson & Tilson for Cross-defendants and Appellants.

Ben Levin for Cross-complainant and Respondent.

FOURT, J.—Kenneth W. Alexander (now deceased) and his divorced spouse Nan L. Alexander, and John B. and Florence F. Thaler, husband and wife, appeal from a summary judgment granted to Exchequer Acceptance Corporation (hereinafter sometimes called Exchequer) declaring that a trust deed executed by the Alexanders and a mortgage executed by the Thalers each constitutes valid and subsisting security for the payment of a now delinquent promissory note.

Kenneth W. Alexander was, at the time of the transaction which constitutes the subject of the present action, president of Astrobell, Inc., and John B. Thaler was secretary-treasurer. The affairs of Astrobell were then subject to a proceeding in the United States District Court under chapter 11 of the Bankruptcy Act (11 U.S.C. 1 et seq.). The corporate officers were attempting to work out a financial arrangement to avert complete bankruptcy and allow Astrobell to continue its business activities.

Astrobell's machinery and equipment were subject to a chattel mortgage securing a $62,000 corporate promissory note to the Bank of America. The note, which was guaranteed by Capital Reserve Corporation (hereinafter sometimes called Capital Reserve) was delinquent and the bank was threatening to foreclose upon and sell the equipment. In view of the pending bankruptcy proceedings and the threatened foreclosure, Astrobell reached an agreement for the refinancing of a substantial portion of its indebtedness by Capital Reserve. Accordingly Escrow No. 12192 was opened at Beverly Hills Escrow to arrange for Astrobell to sell to and lease-back from Capital Reserve all of its machinery and equipment. When the terms of that escrow, as subsequently amended, were only partly completed, Astrobell entered into and consummated a transaction for the sale and lease-back of the same machinery and equipment with another company; it thus became impossible for Escrow No. 12192 to be completed. Despite these financial arrangements, Astrobell was ultimately adjudicated a bankrupt in September 1965, and bankruptcy proceedings are still pending in United States District Court. Meanwhile, as a result of conflicting demands made upon Beverly Hills Escrow for the return or delivery of documents prepared to implement Escrow No. 12192, the escrow company instituted this action naming as defendants numerous parties who par-

ticipated in that escrow, including appellants and respondent, and requesting a declaration of the respective rights and duties of the parties. Exchequer, which had authorized the payment out of Escrow No. 12192 of $20,000 deposited therein for the benefit of Astrobell, filed a cross-complaint requesting a declaration that a trust deed deposited by the Alexanders and a mortgage deposited by the Thalers constituted valid security to which Exchequer was entitled for the repayment of its funds. This appeal is taken from a summary judgment granted in favor of Exchequer on its cross-complaint for declaratory relief.

The original instructions in Escrow No. 12192 dated July 22, 1964, provided that in consideration of the sale and purchase of the Astrobell machinery and equipment, Capital Reserve would deposit in escrow for the benefit of Astrobell the sum of $83,000. According to the provisions of this escrow, which was scheduled to close on or before September 13, 1964, Astrobell agreed to lease back the same machinery and equipment on specified terms and to give Capital Reserve the following security for the rental payments: (1) $20,000 to be deposited with a local savings and loan association; (2) a second trust deed on residential property in Tujunga, California, owned by the Alexanders; (3) a second trust deed on certain real property in Apache Junction, Arizona; (4) a second trust deed on certain real property in Southampton, Long Island, New York. In addition, the rental payments were to be personally guaranteed by David Bresler for a consideration of $7,500 which Capital Reserve agreed to pay him at the close of escrow. The escrow agent was directed to pay out of the consideration to be deposited by Capital Reserve approximately $62,000 in full satisfaction of Astrobell's indebtedness to obtain the release of the chattel mortgage held by the Bank of America, and to pay approximately $13,500 to the United States District Court at the close of escrow.

After the original instructions controlling Escrow No. 12192 were executed further negotiations took place between the Astrobell officers, Alexander, Thaler, and R. E. Lorenz, and the vice-president of Exchequer, David Bresler. Exchequer agreed to commit $20,000 to the use of Astrobell on certain terms and conditions, and accordingly on August 14, 1964, Escrow No. 12192 was amended[1] to provide for the

---

[1]"Dated August 14, 1964        Escrow No. 12,192

"The previous instructions in this Escrow are hereby modified or

deposit of $20,000 by Exchequer to be used in a specific manner in consideration for the assignment of a promissory note and other security. Pursuant to the terms of the amendment R. E. Lorenz indorsed to Exchequer and deposited in escrow

amended in the following particulars only:

"That portion of the original escrow instructions, dated July 22, 1964, which states 'As security for said lease, lease among other things shall provide for the deposit of:

"1. $20,000.00 on deposit with a local savings and loan association.

"2. A second trust deed on the real property at 9815 Creemore Dr., Tujunga, Calif., subject to a first trust deed not exceeding $16,000.00.

"3. A second trust deed on the real property at Apace, [sic] Junction, Arizona, subject to a first trust deed of record, not exceeding $9,500.00.

"4. A second trust deed on the real property at No. 5 Coldspring Bay Road, Southampton, Long Island, New York, subject to a first trust deed not exceeding $9,600.00.

"The above items as set forth commencing with 'As security for said lease, lease among other things shall provide for the deposit of' is hereby AMENDED by deleting item 3 and 4 above and substituting in its place and stead the following:

"1. In lieu and in place thereof, Exchequer Acceptance Corporation, a corporation, will purchase from R. E. Lorenz, (one of the officers of the Astrobell, Inc.) an unsecured promissory note, dated July 29, 1963, in the original amount of $30,000.00, executed by Virgil L. Kirby in favor of R. E. Lorenz, unpaid balance of which is $22,000.00, plus accrued interest, at 6% per annum from June 24, 1964. Said note will be purchased by Exchequer Acceptance Corporation, a corporation, for the sum of $20,000.00, plus accrued interest, and R. E. Lorenze, [sic] agrees to assign all right, title and interest in and to said unsecured note in favor of the Exchequer Acceptance Corporation, and in addition to said assignment of the unsecured note, Exchequer Acceptance Corporation, is to receive the following:

"2. As additional security for said unsecured note of Virgil L. Kirby, Attorney John N. Frolich agrees to hold for Exchequer Acceptance Corporation, a corporation, approximately $8,000.00 of current accounts receivable of Astrobell, Inc., which shall be available to Exchequer Acceptance Corporation, in the event of a default.

"3. A second trust deed, dated August 11, 1964, on the real property described as: Lot 20 of Tract 17486, as per map recorded in book 529, pages 25 and 26 of Maps, in the office of the county recorder of Los Angeles County, commonly known as 9815 Creemore Drive, Tujunga, California, to be executed by Kenneth W. Alexander and Nan L. Alexander, husband and wife, in favor of Exchequer Acceptance Corporation, a corporation, *to be given as additional security for the payment of that certain unsecured note described above.* [Italics added.]

". . . . . . . . .

"4. A second mortgage, dated August 11, 1964, on the real property described as being situated in the County of Fairfield, State of Connecticut, as per description attached hereto and made a part hereof; and being commonly known as an eight room frame dwelling situated in the City of Stamford, County of Fairfield and State of Connecticut and it is expressly understood and agreed that said mortgage as executed by John B. Thaler and Florence F. Thaler, husband and wife, in favor of Exchequer Acceptance Corporation, a corporation, will be recorded as an accomodation [sic] only in the County of Fairfield, State of Con-

an unsecured promissory note dated July 29, 1963, made by Virgil L. Kirby in favor of R. E. Lorenz and bearing interest at 6 percent per annum on the unpaid principal balance of $22,000. In addition, the Alexanders on or about August 11, 1964, executed and deposited in escrow a second trust deed on their home in Tujunga, California, and the Thalers on or about August 18, 1964, executed and deposited in escrow a second mortgage on a residence which they owned in Stamford, Connecticut. Each of the two foregoing instruments expressly recited that it was given as security for the payment of the unsecured Kirby note. Exchequer on or about August 19, 1964, deposited into escrow the $20,000 consideration for the assignment of the Kirby note. Of that sum, $15,000 was promptly disbursed by the escrow agent to John N. Frolich, attorney for Astrobell, in trust for the use of Astrobell in the bankruptcy proceedings and on September 18, 1964, the remaining $5,000 was disbursed to John N. Frolich pursuant to a second amendment to the escrow instructions for a use not therein specified.

David Bresler, Exchequer vice-president and a substantial shareholder in Capital Reserve, filed a declaration in support of Exchequer's motion for summary judgment in which he incorporated by reference the attached instructions and amendments thereto relating to Escrow No. 12192. He alleged in explanation that because Astrobell at the time the original escrow instructions were drawn did not have $20,000 to deposit with a savings and loan association as security for the equipment lease-back, its officers asked Bresler for financial

necticut and the escrow holder is not to be concerned with the validity of said document in the State of Connecticut, but merely as to the preparation, execution and recordation only, *which is given as additional security for the payment of that certain unsecured note.* [Italics added.]

"The sum of $20,000.00 realized from the sale of said note by R. E. Lorenz is to be duly deposited into escrow, and of said sum $15,000.00 is to be paid over to John N. Frolich, Attorney at Law, 411 West Seventh Street, Los Angeles 14, Calif., which said sum shall be paid over to said attorney in trust, to be utilized in the United States District Court, Southern District of California, Central Division, in Bankrupcy [*sic*] No. 167-955-WM, for the benefit and use of Astrobell, Inc., Debtor therein based on the Court's acceptance and approval of the re-instatement [*sic*] of the Astrobell, Inc., from the Bankrupcy [*sic*] pending. In the event the Bankrupcy [*sic*] is not dismissed then said amount of $15,000.00 is to be returned into escrow, the unsecured note shall be assigned back to R. E. Lorenze [*sic*] and the second trust deed and second mortgage revoked and returned to the parties executing said documents.

"It is understood and agreed that R. E. Lorenz will repurchase the note set forth in item 1 above by the deposit of $20,000.00 as set forth in the original instructions dated July 22, 1964. . . ."

assistance. Lorenz offered to assign to a prospective lender the unsecured Kirby note with a principal balance of $22,000; the Alexanders and the Thalers agreed to secure payment of the Kirby note with a trust deed and a mortgage, respectivly, on their residential properties. Bresler thereupon agreed on behalf of Exchequer to deposit $20,000 in escrow for the use of Astrobell on the further condition that should Astrobell fail to have the pending bankruptcy proceedings dismissed, the money should be returned to escrow and Lorenz should repurchase the Kirby note. Accordingly the escrow instructions were amended on August 14, 1964, (see fn. 1, *supra.*) and the cash, the indorsed promissory note, the Alexander trust deed and the Thaler mortgage were deposited therein. The Astrobell officers then told Bresler that the $20,000 must be disbursed immediately, $5,000 to obtain the Bank of America's agreement to defer foreclosure and $15,000 to obtain a dismissal of the bankruptcy proceedings, otherwise the equipment would not be available to complete the Capital Reserve purchase and lease-back. The August 14, 1964, amendment specifically authorized the release of $15,000 in trust to Astrobell's attorney to obtain dismissal of the bankruptcy proceedings, and another amendment on September 18, 1964, authorized the release of the remaining $5,000 to Frolich with the understanding that he should pay that sum to the Bank of America in return for its agreement to defer foreclosure action.

Bresler further alleged that after Exchequer released the $20,000 from escrow to facilitate the sale and lease-back transaction with Capital Reserve, Alexander and Thaler acting on behalf of Astrobell effected a sale and lease-back of the machinery and equipment with Machinery Leasing Company, Inc. (hereinafter sometimes called Machinery Company). In support of these allegations, Bresler attached and incorporated by reference a copy of the application executed by Alexander on behalf of Astrobell requesting from the bankruptcy court an order approving the sale and lease-back with Machinery Company, and copies of the bill of sale to and the lease agreement with Machinery Company subsequently executed by Alexander and Thaler for Astrobell. (A copy of the court's order approving the proposed transaction is incorporated in the record, attached to the response to interrogatories in which Frolich admits that the $15,000 which he paid to the bankruptcy referee was included in the sum of over $50,000

used to pay unsecured creditors of Astrobell.) Finally, Bresler alleges that on account of the sale and lease-back with Machinery Company, Astrobell was unable to complete Escrow No. 12192; that Beverly Hills Escrow retained possession of the Alexander trust deed, the Thaler mortgage and the Kirby note upon which only one payment of $4,000 was made during escrow; that the Kirby note is presently delinquent and the entire principal balance of $18,000 plus accrued interest is due, owing and unpaid; that Lorenz failed and refused to repurchase the Kirby note from Exchequer; that Exchequer attempted to foreclose on the Alexander trust deed and the Thaler mortgage but Beverly Hills Escrow, acting upon instructions from Alexander and Thaler, refused either to turn over the instruments to Exchequer or to pursue foreclosure; and that Exchequer is the rightful owner and entitled to possession of the trust deed and mortgage as alleged in its cross-complaint.

Thaler filed the single declaration in opposition to Exchequer's motion for summary judgment. The allegations therein contained do not contradict or controvert the allegations of fact in the Bresler declaration in any material respect. Thaler declares that the Thaler mortgage and Alexander trust deed were intended as security for the performance of Astrobell under its lease with Capital Reserve; that Thaler had no intention of guaranteeing Kirby's note; that although the contemplated lease transaction was never completed, the escrow company did not return the trust deed and mortgage to the Alexanders and the Thalers, respectively; that Exchequer made no loan to Astrobell, but ''The $20,000 which was deposited into the escrow was the proceeds from an assignment by Lorenz to Exchequer of the Kirby promissory note.''

Bresler's supplemental declaration filed thereafter merely emphasizes his original allegations that Exchequer authorized Astrobell to use the $20,000 for the sole purpose of placing Astrobell in the position to complete the escrow for the purchase and lease-back of its machinery and equipment with Capital Reserve; that appellants agreed that the money would be used to pay $5,000 to the Bank of America only if it would withhold foreclosure; and to pay $15,000 to the bankruptcy receiver only if the bankruptcy could then be dismissed; that appellants promised that Exchequer would be repaid the $20,000 if both of these events did not occur; that appellants

contrary to their agreement caused the $15,000 to be paid to the bankruptcy receiver in order to obtain bankruptcy court approval of a plan of arrangement authorizing Astrobell to sell and lease back its machinery and equipment from Machinery Company. None of the allegations of the Bresler declarations is refuted or contradicted by material, relevant evidentiary matter in Thaler's declaration.

The purpose of the summary judgment statute (Code Civ. Proc., § 437c) is to promote and protect the administration of justice, and to expedite litigation by the elimination of needless trials. (*Bank of America etc. Assn.* v. *Oil Well Supply Co.,* 12 Cal.App.2d 265, 270 [55 P.2d 885]; *Aguirre* v. *Southern Pac. Co.,* 232 Cal.App.2d 636, 641 [43 Cal.Rptr. 73]; *Spencer* v. *Hibernia Bank,* 186 Cal.App.2d 702, 712 [9 Cal.Rptr. 867].) The court on a motion for summary judgment does not try issues, but merely determines on the basis of the affidavits of the parties whether there are factual issues to be tried. (*Zancaner* v. *Louisville & Nashville R.R. Co.,* 220 Cal.App.2d 836 [34 Cal.Rptr. 143]; *Walsh* v. *Walsh,* 18 Cal.2d 439 [116 P.2d 62].) Because summary judgment is a drastic procedure it should be approached with caution and the affidavits opposing the motion should be liberally construed while those of the moving party must be strictly construed. (*Walsh* v. *Walsh, supra,* 18 Cal.2d 439, 441-442; *Desny* v. *Wilder,* 46 Cal.2d 715, 725-726 [299 P.2d 257].) The court, however, is not required ". . . either to disregard facts stated in the plaintiff's affidavits that are not contradicted, or to read into the defendant's affidavit facts that are not stated therein." (*Buffalo Arms, Inc.* v. *Remler Co.,* 179 Cal.App.2d 700, 703 [4 Cal.Rptr. 103].) "When an affidavit in support of a motion for summary judgment is uncontroverted, a trial court may accept as true the facts stated therein (*Cone* v. *Union Oil Co.,* 129 Cal.App.2d 558, 562-563 [277 P.2d 464]; *Southern Pac. Co.* v. *Fish,* 166 Cal. App.2d 353, 359-360 [333 P.2d 133])." (*Majors* v. *County of Merced,* 207 Cal.App.2d 427, 438 [24 Cal.Rptr. 610].) Where no triable issues of fact exist and the moving party's affidavits set forth sufficient facts to sustain a judgment in his favor a summary judgment properly may be granted. (*Desny* v. *Wilder, supra,* 46 Cal.2d 715, 726; *Majors* v. *County of Merced, supra,* p. 438.) The summary judgment procedure is appropriate in declaratory relief actions since "The propriety of the application of declaratory relief lies in the

trial court's function to render such a judgment when only legal issues are presented for its determination." (*Spencer* v. *Hibernia Bank*, 186 Cal.App.2d 702, 712 [9 Cal.Rptr. 867].)

And a summary judgment will not be reversed unless there has been an abuse by the trial court of its legal discretion. (*Majors* v. *County of Merced, supra,* p. 440.)

Appellants appear to contend, initially, that Thaler's declaration raises certain issues of fact concerning the intentions of the parties, especially whether the trust deed and mortgage were to constitute security for payment of the Kirby note or only for the rental payments under the machinery lease-back and whether Exchequer deposited $20,000 in escrow as a loan to Astrobell or for the outright purchase of the Kirby note. Whether the Kirby note was transferred to Exchequer in return for a loan or pursuant to an agreement for its purchase with an agreement to repurchase under certain conditions appears to us to be immaterial to the issue of whether the Alexander trust deed and Thaler mortgage constituted security for the Kirby note. Appellants are not entitled to resort to parol evidence to contradict the clear provisions of the escrow and the security instruments which specifically state that they were given as security for the Kirby note. "When the language used in the contract is fairly susceptible to the construction claimed by one of the parties, extrinsic evidence may be considered, not to vary or modify the terms of the agreement, but to aid the court in ascertaining its true meaning. [Citation.]" (*Reid* v. *Overland Machined Products*, 55 Cal.2d 203, 210 [10 Cal.Rptr. 819, 359 P.2d 251].)

"Defendant contends, however, that a 'different intention' (Civ. Code, § 1739) has been made to appear by its affidavit. In making this contention, however, it overlooks the parol evidence rule (Civ. Code, § 1625; Code Civ. Proc., § 1856). . . . [Citation.] . . .

"'The rule that prior or contemporaneous negotiations cannot be used to contradict, add to or vary a written contract, applies not only to the letter of the written document, but also to its legal effect.'" (*Buffalo Arms, Inc.* v. *Remler Co.*, 179 Cal.App.2d 700, 709-710 [4 Cal.Rptr. 103]; *Dillon* v. *Sumner,* 153 Cal.App.2d 639, 643 [315 P.2d 84].) Concededly the escrow instructions and amendments thereto contain ambiguities susceptible of explanation, but insofar as the instructions and supporting instruments are clear and.

unambiguous they are not subject to refutation by parol. Thaler's statement of the absence of any intention on his part that the mortgage (and by implication the Alexander trust deed as well) should constitute security for the Kirby note raises no triable issue of fact because it directly contradicts the amended escrow instructions (see footnote 1, *supra*) and the express provisions in the security instruments. Since these documents are *not* "reasonably susceptible of the meaning contended for by . . . [appellants] . . ." (*Delta Dynamics, Inc.* v. *Arioto,* 69 Cal.2d 525, 528 [72 Cal.Rptr. 785, 446 P.2d 785]), Thaler's declaration of his intention is not, even under the recently liberalized parol evidence rule (See *e.g., Masterson* v. *Sine,* 68 Cal.2d 222 [65 Cal.Rptr. 545, 436 P.2d 561]; *Urban Renewal Agency* v. *Hackney,* 262 Cal.App.2d 454, 457 [68 Cal.Rptr. 743]; *Delta Dynamics, Inc.* v. *Arioto, supra*), evidence competent to controvert the express terms of these instruments. The Thaler declaration sets forth no evidentiary facts to support an interpretation contrary to the clear import of the documents, or to create a triable issue of fact. We therefore conclude that the trust deed and mortgage constitute security for the Kirby note whether or not the sale and lease-back transaction could be completed.

"Where on a motion for summary judgment the issues are of law only it is the duty of the trial court to determine those issues." (*Doyle* v. *Hibernia Bank,* 156 Cal.App.2d 16, 20 [319 P.2d 412]; *Bank of America etc. Assn.* v. *Casady,* 15 Cal.App.2d 163, 168 [59 P.2d 444].) Appellants contend as a matter of law (1) that because Escrow No. 12192 was never in a position to close the security instruments are ineffective; (2) that due to the failure of the condition that the bankruptcy proceedings should be dismissed appellants were excused from their performance in giving the trust deed and mortgage as security; and (3) that appellants were exonerated from their obligation to provide security for repayment of the Kirby note by an agreement between Bresler and Lorenz outside of escrow that should Lorenz fail to make timely repurchase of the note, Bresler would be entitled to the 25 percent interest in Astrobell scheduled for Lorenz. Appellants' contentions have no legal merit. First, it is made to appear clearly from the terms of the August 14, 1964, amendment to Escrow 12192 that the Alexander trust deed and the Thaler mortgage were deposited in escrow as security for the Kirby note; if these instruments were to constitute security

for Astrobell's rental payments upon the lease-back of its equipment as well, this aspect of the transaction was rendered immaterial when Astrobell completed that transaction with another company. Second, appellants deliberately and with knowledge diverted the Exchequer funds from the limited purposes for which these monies were released and, having failed to reimburse the escrow, they cannot claim to be entitled to the return of the security without the repurchase of the Kirby note. ▮ "A person cannot take advantage of his own act or omission to escape liability. If he prevents or makes impossible the performance or happening of a condition precedent, the condition is excused. [Citations.]" (*Rains* v. *Arnett,* 189 Cal.App.2d 337, 347 [11 Cal.Rptr. 299]; *Parsons* v. *Bristol Dev. Co.,* 62 Cal.2d 861, 868-869 [44 Cal.Rptr. 767, 402 P.2d 839].) ▮ Finally, the alleged agreement between Lorenz and Bresler that Lorenz should forfeit his anticipated 25 percent interest in Astrobell should he fail to repurchase the Kirby note is irrelevant. Exchequer asserts and appellants do not dispute that Exchequer is the owner of the note which Lorenz failed to repurchase. Astrobell in fact misused the $20,000 which was disbursed through escrow upon Exchequer's authorization for express purposes, and the escrow was never reimbursed in that sum from any source. Exchequer was, as a result, entitled to demand the Kirby note and the security given for the payment thereof. Appellants having set forth in their declaration no competent extrinsic evidence which they might introduce at a trial to support a contrary interpretation of the escrow transaction, the construction to be placed on the documents which evidenced the entire transaction was not an issue of fact but one of law which was properly determined by the trial court. (*Meyer* v. *State Board of Equalization,* 42 Cal.2d 376 [267 P.2d 257].) The motion for summary judgment was appropriate and was properly granted, and judgment in Exchequer's favor was entered accordingly. (*Michelman* v. *Frye,* 238 Cal.App.2d 698 [48 Cal.Rptr. 142].)

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.