[Civ. No. 19577. First Dist., Div. One. Feb. 27, 1962.]

MARION KATHLEEN SNIDER, a Minor, etc., Plaintiff and Appellant, v. MATHEW A. SNIDER et al., Defendants and Respondents.

Harry O. B. Farris for Plaintiff and Appellant.

Robert E. Lawson for Defendants and Respondents.

SULLIVAN, J.—Plaintiff Marion Kathleen Snider, an infant, by Joan K. Black, her mother and guardian *ad litem* appeals from a judgment in favor of the defendants Mathew A. Snider and John L. Snider, entered upon the order granting defendants' motion for a summary judgment.[1] Mathew is the father and John the paternal grandfather of the plaintiff.

Plaintiff's complaint filed November 6, 1959, when she was 6 years old, separately states two causes of action. The complaint alleges that on or about June 20, 1958, the defendants entered into a written contract pursuant to the terms of which each of the defendants promised and agreed with the other defendant to pay plaintiff seven and one-half per cent (7½%) of the amount received by each pursuant to a certain settlement set forth in the contract; that the said amounts to be paid plaintiff pursuant thereto total the sum of $15,000; and that defendants have not paid said sum or any part thereof although demand has been made therefor. In the second cause of action, the complaint alleges a common count in *indebitatus assumpsit* for the same amount of money due pursuant to the terms of what is apparently the same

---

[1] On oral argument the parties stipulated before us that the "Order Granting Motion for Summary Judgment for Defendants" is in fact the judgment appealed from and we so construe it.

contract. No copy of any contract is attached to the complaint as an exhibit.

The defendants filed a demurrer to the complaint and at the same time a motion for summary judgment. The motion is supported by affidavits of Mathew Snider, John L. Snider, and George Catlin, attorney for Mathew.

Mathew Snider's affidavit states that his mother, Kathleen E. Snider, died on June 11, 1958, leaving a will naming him as executor and sole beneficiary; that to avoid a will contest he and his father agreed to negotiate a settlement, each feeling they should have a share in the estate; that affiant was desirous of providing for the plaintiff, referred to as Kathy, as well as afterborn children, and requested his father to take slightly less than one-half of the estate; that affiant and his father tentatively agreed upon this shortly after the funeral of affiant's mother, but no agreement was reduced to writing or executed because the details were not settled; that, as pointed out by affiant's attorney, George Catlin, such agreement could not be drafted until certain legal and tax considerations had been researched; that affiant expressed a desire to create a trust for Kathy out of his share but his attorney advised him that this would not be desirable, since such a trust might involve tax problems and excessive legal expense; that, therefore, upon advice of counsel, affiant decided not to create a trust for Kathy and not to pay over any part of his share of the estate.

Mathew's affidavit further states that on December 1, 1958, affiant and his father, John, entered into a written contract (a copy of which is attached to and incorporated in the affidavit) pursuant to which the parties divided the entire estate of affiant's mother between themselves but "did not agree to pay Kathy any sum of money nor create a trust for her"; that "[p]ursuant to the terms of said agreement, affiant collaterally promised to provide for Kathy during his life and to bequeath a certain part of his inheritance to Kathy upon his death; that, on June 23, 1959, affiant and his father entered into a final agreement, . . . [a copy of which is also attached to and incorporated in the affidavit] rescinding all former agreements and dividing the estate in a certain manner. Absolutely no provision was made in reference to Kathy"; that Kathy had given no consideration of any kind for the alleged contract of June 20, 1958, and did not change her position in reliance thereon.

Mathew's affidavit further states that *affiant and his father did not enter a written agreement, or any agreement whatsoever on or about June 20, 1958, or at any other time promising that each of them would pay Kathy seven and a half per cent (7 1/2%) of the amounts received by them*; that affiant has never considered payment of any money to his daughter aside from monthly support payments and periodic gifts of small amounts; that one of the reasons for not considering transfer of any substantial amounts of money to Kathy was that her mother, Joan K. Black, would have control of it during Kathy's minority and she lacked adequate business acumen to properly manage the same; that affiant has made adequate provision for his daughter in the event of his death, but "affiant did not and will not transfer not [sic] contract to transfer" substantial sums to his daughter.

The affidavit of John Snider avers his personal knowledge of the material facts of Mathew's affidavit which John had read, and alleges that he confirms and adopts such statements.

The affidavit of George Catlin, Mathew's attorney, alleges that beginning in June 1958 Mathew requested the preparation of a settlement agreement by affiant; that Mathew originally considered creating a trust for Kathy and afterborn children, but because of "the tax and practical consideration" no definite agreement could be reached in the early stage of negotiation; that affiant advised Mathew in July 1958 that a trust for Mathew's child or children was impracticable; that affiant therefore advised Mathew to set aside in his own name a portion of his share of the Kathleen Snider estate in case of an emergency during his child or children's minority and to create a testamentary trust for such child or children; that thereafter several drafts of an agreement were considered by Mathew and John, and ultimately an agreement dated December 1, 1958, was signed by them; subsequently this agreement "was replaced by an agreement dated June 23, 1959."

Joan K. Black, plaintiff's guardian *ad litem*, filed an amended counteraffidavit (no original affidavit is in the record) alleging that on or about June 20, 1958, in Los Angeles, California, the defendants made and entered into a written agreement by which they settled their rights and interests *in the Estate of Kathleen E. Snider*; that as a part of such agreement each of the defendants promised and agreed with the other *"that a trust would be set up"* for the

benefit of plaintiff and that each said defendant would pay *"into the said trust fund"* seven and a half per cent of the amount received pursuant to the agreement; that said amount totalled $15,000; and that the defendants have failed and refused *to set up the trust* or to *pay the said sums into the said trust* or to plaintiff.

The counteraffidavit concludes with the statement that: "[t]he facts stated herein are within the personal knowledge of the affiant, and the affiant, if sworn as a witness, can testify competently thereto."

Upon hearing the motion, and after consideration of all affidavits and exhibits attached thereto, the counteraffidavit and all the pleadings, the court below granted defendants' motion for summary judgment. Demurrers were considered moot and not necessary to be ruled on. In its memorandum of decision the court below stating that "the alleged agreement" of June 20, 1958, was rescinded by the defendants, inferentially by their agreement of December 1, 1958, and directly by this agreement of June 23, 1959, held that the defendants had the right to so rescind. The court pointed out that the counteraffidavit did not deny the execution of the later agreement.

Plaintiff contends in her opening brief that 1) it was improper for the court to hear and grant defendants' motion for a summary judgment with only a demurrer, and not an answer, on file; and 2) plaintiff's rights as an infant, third party donee beneficiary arising out of the contract alleged in her complaint could not be defeated by the later agreements of December 1958 and June 1959. In meeting the issue raised in respondents' brief, plaintiff also contends 3) that her counteraffidavit is not fatally defective in that it fails to meet the requirements of section 437c of the Code of Civil Procedure.

We shall consider the issues presented by plaintiff's first and third contentions. Our decision herein makes it unnecessary for us to discuss plaintiff's second contention.

█ Plaintiff's argument that section 437c of the Code of Civil Procedure does not authorize a motion for summary judgment by defendants in the absence of an answer to the complaint, is disposed of by a reference to the code section in question. Prior to the 1957 amendment to section 437c (Stats. 1957, ch. 1457, § 1) said section read as follows: "In superior courts and municipal courts *when an answer is filed* in any kind of action if it is claimed that there is no defense to the

action or that the action has no merit, on motion of either party . . . the answer may be stricken out or the complaint may be dismissed and judgment may be entered. . . .'' (Emphasis added.) The 1957 amendment struck out the above-italicized language ''when an answer is filed'' and the section now reads: ''In superior courts and municipal courts if it is claimed the action has no merit. . . .'' It is clear that the Legislature by the above amendment intended to make it definite that no answer need be on file. (See 2 Witkin, Cal. Procedure, p. 1714, 1961 Supp. p. 164; *Taliaferro* v. *Coakley,* 186 Cal.App.2d 258, 260 [9 Cal.Rptr. 529].)

The cases of *Loveland* v. *City of Oakland,* 69 Cal.App.2d 399 [159 P.2d 70], cited by appellant and *Gale* v. *Wood,* 112 Cal.App.2d 650 [247 P.2d 67], although containing dicta stating that a motion under section 437c will not lie unless an answer is on file, were both decided prior to the effective date of the 1957 amendment to such section and, we feel, are therefore not decisive of the above question.

The motion for summary judgment was, therefore, properly before the trial court. We now turn to a consideration of its merits.

Well-settled principles of law define the nature and purpose of the procedure set forth in section 437c of the Code of Civil Procedure, and guide us in our task of reviewing the sufficiency of the affidavits. ▇▇▇ It ''provides a method by which, if the pleadings are not defective, the court may determine whether the triable issues apparently raised by them are real or merely the product of adept pleading.'' (*Coyne* v. *Krempels,* 36 Cal.2d 257, 262 [223 P.2d 244].) ▇▇▇ ''While it is not a substitute for a regular trial and does not authorize the trial of any bona fide issues of fact which the affidavits may reveal, it permits the court to pierce the allegations of the pleadings to ascertain whether a genuine cause of action exists. . . .'' (*Cone* v. *Union Oil Co.,* 129 Cal.App.2d 558, 562 [277 P.2d 464].) ▇▇▇ As we stated in *Burke* v. *Hibernia Bank,* 186 Cal.App.2d 739, 744 [9 Cal.Rptr. 890] : ''The summary judgment procedure seeks to discover, through the media of affidavits, whether the parties possess evidence which demands the analysis of trial.'' Witkin in his work on California Procedure (vol. 2, pp. 1711-1715) points out that the purpose of the procedure is to discover proof and thus challenge its sufficiency in support of the allegations of the pleadings.

Equally well-settled principles guide us in our task of examining the sufficiency of the affidavits prescribed by the section. ■ At the outset we recognize the admonition of the Supreme Court in *Eagle Oil & Ref. Co.* v. *Prentice,* 19 Cal.2d 553, 556 [122 P.2d 264] : "The procedure is drastic and should be used with caution in order that it may not become a substitute for existing methods in the determination of issues of fact. (See *Walsh* v. *Walsh, supra* [18 Cal.2d 439 (116 P.2d 62)].)

■ "For these reasons it may further be said that the affidavits of the moving party, the plaintiff in this case, should be strictly construed and those of his opponent liberally construed." (See also *McComsey* v. *Leaf,* 36 Cal.App.2d 132 [97 P.2d 242] ; *Nini* v. *Culberg,* 183 Cal.App.2d 657, 661 [7 Cal.Rptr. 146].) ■ If, after an examination of the affidavits, doubt exists as to whether summary judgment should be granted, such doubt should be resolved against the moving party. (*Whaley* v. *Fowler,* 152 Cal.App.2d 379, 381 [313 P.2d 97] ; *House* v. *Lala,* 180 Cal.App.2d 412, 415 [4 Cal.Rptr. 366] ; *Travelers Indemnity Co.* v. *McIntosh,* 112 Cal.App.2d 177, 182 [245 P.2d 1065].) ■ But, on the other hand, as we stated in *Burke* v. *Hibernia Bank, supra,* 186 Cal.App.2d at page 744: "a summary judgment will stand if the supporting affidavits state facts sufficient to sustain a judgment and the counteraffidavits do not proffer competent and sufficient evidence to present a triable issue of fact. (*Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 261 [223 P.2d 244] ; Code Civ. Proc., § 437c.)"

■ We first consider the affidavits of the moving party. They "must contain facts sufficient to entitle . . . defendant to a judgment in the action. . . ." (Code Civ. Proc., § 437c.) To prevail, therefore, such affidavits "must state facts establishing every element necessary to sustain a judgment in his favor." (*House* v. *Lala, supra,* 180 Cal.App.2d 412, 416.) ■ Such facts "shall be set forth with particularity" (Code Civ. Proc., § 437c) and shall be within the personal knowledge of the affiant, the affidavit to show that the affiant, if sworn as a witness, can testify competently thereto. ■ As the court stated in *House* v. *Lala, supra,* "[t]o satisfy the statutory requirement of 'particularity,' the movant's affidavits must state all the requisite evidentiary facts and not merely the ultimate facts. (*Southern Pacific Co.* v. *Fish,* 166 Cal.App.2d 353, 362 [333 P.2d 133] ; *Murphy* v. *Kelly,* 137 Cal.App.2d 21, 30-31 [289 P.2d 565].) More-

over, neither conclusions of law nor conclusions of fact are sufficient to satisfy the statutory requirement. (*Gardenswartz* v. *Equitable etc. Soc.*, 23 Cal.App.2d Supp. 745, 754 [68 P.2d 322].)''

Applying the above rules, it is clear that defendants' affidavits and exhibits set forth facts which, if true, establish that plaintiff's action is without merit. Although examined in the light of the precept of strict construction against defendants (*Eagle Oil & Ref. Co.* v. *Prentice, supra*, 19 Cal.2d 553) it is beyond question that defendants have made a detailed and factual denial of the contract liability claimed in the complaint. In essence Mathew Snider states that although there had been considerable discussion on the subject over a period of months after Kathleen Snider's death on June 11, 1958, ''upon the advice of counsel, affiant decided not to create a trust for Kathy and, for the same reasons, not to pay over any part of his share of the estate.'' His statement that ''affiant and his father did not enter into a written agreement, or any agreement whatsoever, on or about the 20th day of June, 1950, or at any other time'' promising to pay Kathy as alleged in the complaint, is a direct, unequivocal and complete denial of the foundations of plaintiff's claim. This is buttressed by a full account of the execution by defendants of two contracts at times much later than plaintiff's claimed date of execution in June. These later contracts on December 1, 1958, and June 23, 1959, are set forth in full in the record. As averred by defendants they make no provision for Kathy. John Snider's affidavit, adopting the affidavit of Mathew, corroborates Mathew's statements. Thus the two parties who, plaintiff claims, made a contract for her benefit deny that they ever did so. Their account of the negotiations between them and the eventual execution of the above-mentioned contracts is corroborated by Mathew's attorney. Thus the moving parties' affidavits establish facts, which, if true, negate any liability of defendants to plaintiff and are therefore sufficient to entitle defendants to a judgment.

Since the supporting affidavits state facts sufficient to support the judgment, we proceed to determine whether the counteraffidavit of Joan K. Black does ''proffer competent and sufficient evidence to present a triable issue of fact.'' (*Burke* v. *Hibernia Bank, supra*, 186 Cal.App.2d at p. 744.)

The counteraffidavit, which we have already summarized, alleges directly and positively, and not merely

upon information and belief that on or about June 20, 1958, in Los Angeles the defendants entered into a written contract under the terms of which they agreed to set up a trust for the plaintiff into which trust fund they agreed to pay a certain amount, and the breach of said agreement. A comparison of the counteraffidavit with the complaint discloses that the former substantially repeats the allegations of the latter, except that, as appears from the italicized words in our preceding summary of it, the counteraffidavit names the estate of Kathleen E. Snider, fixes the place of execution of the alleged agreement as Los Angeles and alleges that payment to Kathy was to be made through a trust rather than directly.

Does this counteraffidavit raise a triable issue of fact? At the threshold, we are confronted with certain rules governing our examination of it. ▮▮▮ As this court stated in *Buffalo Arms, Inc.* v. *Remler Co.*, 179 Cal.App.2d 700, 703 [4 Cal. Rptr. 103], "Because summary judgment procedure is not a substitute for a trial, our Supreme Court has held that it is drastic and to be used with caution, that the facts stated in the affidavits opposing the motion must be accepted as true, that such affidavits must be liberally construed and need not necessarily be composed wholly of strictly evidentiary facts, and that those of the moving party must be strictly construed. [Citations.] These rules, heavily relied upon by defendant here, do not require us either to disregard facts stated in the plaintiff's affidavits that are not contradicted, or to read into the defendant's affidavit facts that are not stated therein." In the light of these precepts we proceed to determine whether plaintiff's counteraffidavit meets the requirements of section 437c.

That section, in relevant part, provides: "The affidavit or affidavits in opposition to said motion shall be made by the plaintiff . . . , or by any other person having knowledge of the facts, and together shall set forth facts showing . . . that a good cause of action exists upon the merits. The *facts* stated in each affidavit shall be *within the personal knowledge of the affiant,* shall be set forth *with particularity,* and each affidavit shall *show affirmatively* that the *affiant, if sworn as a witness, can testify competently thereto.* When the party resisting the motion appears in a representative capacity, such as a . . . guardian . . . , then the affidavit in opposition by such representative may be made upon his information and belief." (Emphasis added.)

▮▮▮ It will be seen from the foregoing that the counter-

affidavit must meet the following requirements: 1) It must set forth facts with particularity; and 2) It must set forth facts within the personal knowledge of the affiant, to which, as the affidavit shall show affirmatively, the affiant can testify competently if called as a witness. As an exception to the foregoing the statute permits an affidavit on information and belief, when the party resisting the motion appears in a representative capacity. We shall consider the above requirements separately.

Are the facts set forth "with particularity"? In essence, the counteraffidavit only restates the ultimate facts alleged in the complaint. The additions in it, which we have pointed out above, are minor and descriptive and do not go to the root of the issue. The alleged written contract is not attached, nor is it quoted, nor are facts alleged showing the reason for its absence. The affidavit does not state, even on information and belief, the circumstances surrounding the execution of the alleged contract, or how affiant acquired information concerning this fact. Obviously, particularity requires something more than the assertion of the ultimate fact of execution of a contract, where the affiant is not one of the contracting parties. Obviously, too, particularity could have been enhanced by the simple statement of affiant's presence at, and observation of, the execution of the agreement, if that were true. No evidentiary facts are alleged. No separate proof is found of the ultimate facts alleged in the complaint.

Plaintiff urges that the sufficiency of her affidavit appears from an application of the rule that its statement must be liberally construed and accepted as true and the rule that the affidavit may state ultimate facts and conclusions of law, and need not be composed wholly of evidentiary facts. In support of the former rule she cites: *Eagle Oil & Ref. Co.* v. *Prentice, supra,* 19 Cal.2d 553, 556 [122 P.2d 264]; *United States Fidelity & Guar. Co.* v. *Sullivan* (1949) 93 Cal.App.2d 559, 561 [209 P.2d 429]; *Union Bank & Trust Co.* v. *Fabiano* (1955) 137 Cal.App.2d 656, 659 [290 P.2d 577]; *Severini* v. *Massae* (1956) 140 Cal.App.2d 567, 570 [295 P.2d 472]. In support of the latter she relies upon *Whaley* v. *Fowler, supra,* 152 Cal.App.2d 379.

But the foregoing rules, which we have already acknowledged, do not of themselves impress the seal of sufficiency on a counteraffidavit, which in a series of conclusions of law and fact, merely repeats the complaint. Appellant cites no authority which interprets with such tolerance the require-

ment of particularity imposed by the section. If plaintiff's contentions were upheld, all that any plaintiff would have to do would be to repeat the allegations of his complaint in his counteraffidavit. In such event, no matter how groundless the complaint, no summary judgment could ever be had. The object of the procedure for summary judgment, which, as we have shown above, is to discover proof and thus sham pleading, would be frustrated. (See *Coyne* v. *Krempels, supra,* 36 Cal.2d 257; *Cone* v. *Union Oil Co., supra,* 129 Cal. App.2d 558; *Burke* v. *Hibernia Bank, supra,* 186 Cal.App.2d 739.) The rule of liberal construction should not be applied to the affidavits in opposition to the motion, in such a way as to defeat the very purpose of the procedure.

In *Cowan Oil & Refining Co.* v. *Miley Petroleum Corp.,* 112 Cal.App.Supp. 773 [295 P. 504] (App. Dept. Superior Court, Los Angeles, 1931) defendant appealed from a judgment entered on an order granting plaintiff's motion for a summary judgment made under the provisions of former section 831d of the Code of Civil Procedure, on which present section 437c is in part based. Under a contract, plaintiff extracted gasoline from the natural gas produced by defendant, but was authorized to retain a reasonable amount of the gas for the operation of plaintiff's own plant. Plaintiff sought recovery for the gasoline extracted and delivered; defendant counterclaimed for the value of an unreasonable amount of gas retained by plaintiff and converted to its own use, in excess of the amount permitted by the contract. In response to plaintiff's motion for a summary judgment, defendant's counteraffidavit substantially repeated the allegations of its answer. The court stated: ''This language is a copy of the answer, except for the words, 'necessary to operate its gasoline plant' and the equivalent words a few lines below, and is the only statement in the affidavit purporting to support the counterclaim. The affidavit contains nothing in support of denials of the complaint which are contained in the answer. We think the statements quoted are insufficient to defeat the motion for judgment under section 831d. They are manifestly mere conclusions of law or, putting the most favorable construction upon them, they are perhaps conclusions of fact or ultimate facts. Neither conclusions of law, nor conclusions of fact, nor so-called ultimate facts are sufficient to satisfy the requirements of this section.'' (P. 780 of 112 Cal.App.Supp.)

Although the last two sentences quoted above no longer represent an accurate statement of the current rule governing

counteraffidavits (see *McComsey* v. *Leaf, supra,* 36 Cal.App.2d 132, 140; *Eagle Oil & Ref. Co.* v. *Prentice, supra,* 19 Cal.2d 553, 556; *Buffalo Arms, Inc.* v. *Remler Co., supra,* 179 Cal. App.2d 700, 703) and although the court in the *McComsey* case disapproved of the statements in *Cowan* pertaining to the requirements of counteraffidavits, *Cowan* retains persuasive value for our problem at hand. The District Court of Appeal in the *McComsey* case disapproved of the rule announced in *Cowan* to the effect that a counteraffidavit must present *evidentiary* facts as "more severe than was contemplated by the legislature and not supported by the authorities cited in the opinion." (P. 135 of 36 Cal.App.2d.) In *McComsey,* the court held that since the defendant was competent to testify to all of the contents of his counteraffidavit, it was not vitiated because certain conclusions of fact had crept into it. *McComsey* held, as we have pointed out above, that the counteraffidavit need not be composed wholly of evidentiary facts. But the *McComsey* case did not involve counteraffidavits which merely repeated the allegations of the pleading and contained no evidentiary facts. Such an affidavit is useless. (2 Witkin, Cal. Procedure, p. 1715, citing the *Cowan Oil* case; *Schessler* v. *Keck,* 138 Cal.App.2d 663, 669 [292 P.2d 314].)[2]

We turn to the next requirement of the section. Does the affidavit show *facts* within the personal knowledge of the affiant and does it affirmatively show that affiant, if called as a witness, can testify competently thereto? Clearly it does not. It alleges that at a certain time and place the defendants made and entered into a written agreement creating certain rights in the plaintiff. No copy of the agreement is attached. No allegations explain the absence of such a copy. No facts are alleged showing how the affiant, a complete stranger to the agreement, knows of its execution. It is not alleged that she was a percipient witness to its execution or that she subsequently saw the executed document or that she learned about either the document or the event of its execution from others. It is obvious that if called as a witness at trial she could not merely testify that the "Defendants . . . made and entered into a written agreement. . . ."

Furthermore, affiant has contented herself with an allega-

---

[2] The *Cowan Oil* case is also cited with approval in *Rodes* v. *Shannon,* 194 Cal.App.2d 743, 749 [15 Cal.Rptr. 349]. The *Rodes* case, however, involved the movant's affidavit where the rule of strict construction applies.

tion of the agreement according to its legal effect. She has alleged nothing which would indicate that the alleged contract was lost, destroyed or not able to be obtained from the opposing parties. She could not give competent testimony of the contents of such agreement without showing its loss or destruction or other circumstances excusing the production of the original. (Code Civ. Proc., § 1855; *Low* v. *Woodward Oil Co., Ltd.,* 133 Cal.App.2d 116, 121 [283 P.2d 720].)

The counteraffidavit concludes with the allegation that the ''facts stated herein are within the personal knowledge of the affiant, and the affiant, if sworn as a witness, can testify competently thereto.'' Where the facts stated do not themselves show it, such bare statement of the affiant has no redeeming value and should be ignored. (*Schessler* v. *Keck, supra,* 138 Cal.App.2d 663, 670 [292 P.2d 314].) Moreover, section 437c prescribes that the affidavit ''shall show affirmatively'' that affiant can testify competently. Where the affidavit of the opposing party, even though containing some conclusions, has nevertheless been held sufficient to raise a triable issue of fact, the court has been ''satisfied that facts within the knowledge of the affiants and to which they are competent to testify, are set forth with sufficient particularity. . . .'' (*Eagle Oil & Ref. Co.* v. *Prentice, supra,* 19 Cal.2d 553, 561; *Estate of Kelly,* 178 Cal.App.2d 24, 29 [2 Cal.Rptr. 634].)

Plaintiff relies on *Whaley* v. *Fowler, supra,* 152 Cal.App.2d 379, an action for alleged malpractice against a hospital and certain doctors. The trial court granted the motion of the hospital for a summary judgment. Summary judgment was reversed by this court because it appeared that the counteraffidavit of the plaintiff when tested by the rule of construction announced in *McComsey* v. *Leaf, supra,* 36 Cal.App.2d 132; *Travelers Indemnity Co.* v. *McIntosh, supra,* 112 Cal. App.2d 177, and *Eagle Oil & Ref. Co.* v. *Prentice, supra,* 19 Cal.2d 553, raised a triable issue of fact. Such counteraffidavit alleged that an infection developed in plaintiff's leg; that it was uncontrolled and as a result amputation was necessary; that the hospital was negligent in that it failed to take preventive measures to control the infection. As we pointed out in *Whaley,* although these allegations contained some conclusionary material, they did contain matters to which the plaintiff, there, as a layman could properly testify, namely, plaintiff's own physical condition which he of course observed. The *Whaley* case is therefore distinguishable from the case before us, where the counteraffidavit does not show

any evidentiary facts, does not disclose facts within plaintiff's knowledge or observation and merely restates the allegations of the complaint.

We are mindful of the fact that the guardian *ad litem* has made the statements of her counteraffidavit positively and of her own personal knowledge although, acting in a representative capacity, she could have made her affidavit on information and belief (§ 437c). Even if we were to assume that a liberal construction justified our considering it as having been made on information and belief, its sufficiency would not thereby be established. The same defects would remain. To sanction a mere restatement of the complaint, merely because the affiant appears in a representative capacity, would obstruct the purpose of the statute and emasculate the procedure which it provides.

In the summary judgment procedure, the party opposing the motion cannot rely on a verified pleading alone. (*Coyne* v. *Krempels, supra,* 36 Cal.2d 257; *Cone* v. *Union Oil Co., supra,* 129 Cal.App.2d 558; *Kelly* v. *Liddicoat,* 35 Cal. App.2d 559 [96 P.2d 186] ; 2 Witkin, Cal. Procedure, p. 1715.) If such party cannot do so directly, she cannot do so indirectly by merely restating the verified pleading in her counteraffidavit.

We conclude, therefore, that the affidavit of Joan K. Black in opposition to the motion for summary judgment did not set forth facts with particularity, did not state facts within the personal knowledge of the affiant, and did not affirmatively show that she could testify competently thereto. Such being the case, the counteraffidavit did not satisfy in any respect the requirements of section 437c and therefore did not ''present a triable issue of fact.''

In view of our above conclusion that the affidavits of the moving parties state facts sufficient to support the judgment and our additional conclusion that the affidavit in opposition does not present a triable issue of fact, it is not necessary for us to consider plaintiff's remaining contention on appeal. This remaining contention was directed at the holding of the trial court that the alleged agreement of June 20, 1958, was indirectly rescinded by defendant's undisputed agreement of December 1, 1958, and directly rescinded by the agreement of June 23, 1959, also undisputed. In essence, plaintiff's contention, opposing the above reasoning of the trial court, was that since the rights of an infant third party donee beneficiary arising out of the alleged agreement of June 20, 1958,

could not be defeated by the subsequent agreements as a matter of law, the affidavits of the moving parties did not raise a defense to the action as a matter of law. But as we have said, we do not have to determine this question, since the affidavit of plaintiff in opposition presents no triable issue of. fact, and the denials of the moving parties that they ever entered into such an agreement as alleged in the complaint, control. We therefore do not decide whether as a matter of law such rights of an infant third party donee beneficiary are defeated or not by subsequent contracts and expressly leave such question open.

It appears clearly from the order granting summary judgment, that the court considered all the affidavits and exhibits. We hold, therefore, that its decision was correct and must therefore be sustained regardless of the grounds upon which the trial court based its decision. "No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (*Davey* v. *Southern Pacific Co.*, 116 Cal. 325, 329 [48 P. 117].) It is stated in 3 Witkin, California Procedure, page 2234: "If the *decision* is right, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the court reached its conclusion. Two theories seem to be involved here: First, that the appellate court reviews the *action* of the lower court and not the reasons for its action; second, that there can be no prejudicial error from erroneous logic or reasoning if the decision itself is correct." (See also *Yarrow* v. *State of California*, 53 Cal.2d 427, 437 [2 Cal.Rptr. 137, 348 P.2d 687].)

The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.