Filed 9/9/14  Bohm, Matsen, Kegel & Aguilera v. Bonilla CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BOHM, MATSEN, KEGEL & AGUILERA,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSE EULOGIO BONILLA etc.,<br><br>    Defendant and Appellant. | G048212<br><br>(Super. Ct. No. 30-2012-00566173)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gregory H. Lewis, Judge.  Reversed and remanded with directions.

Sayre & Levitt, Federico Castelan Sayre and Adam L. Salamoff for Defendant and Appellant.

The Aguilera Law Group, A. Eric Aguilera and Raymond E. Brown for Plaintiff and Respondent.

## INTRODUCTION

Appellant Jose Bonilla appeals from a default judgment entered against him and in favor of a law firm, Bohm, Matsen, Kegel & Aguilera, LLP (the law firm), which represented him on contingency in several legal proceedings. After Bonilla fired it – and did not pay his legal fees – the law firm sued to collect them. Bonilla defaulted, and the law firm wound up with a $2.2 million default judgment.

We reverse the judgment and send it back to the court for recalculation. Once again, we reiterate that obtaining a default is not the legal equivalent of hitting a fair ball into the stands, after which the plaintiff makes a pro forma trot around the bases. The Code of Civil Procedure requires a prove-up; therefore, a plaintiff seeking a default judgment must *prove* its entitlement to the amount requested. For its part, the trial court does not merely sign off on whatever amounts the plaintiff sets down on the judicial council form. The court must instead evaluate the supporting evidence.

The law firm did not present evidence to support the amount of default damages. For this reason, the prejudgment interest and the attorney fee awards, which were based on the underlying damages amount, must also be reconsidered. We return the matter to the trial court to fix an amount based on proper evidence, should the law firm renew its request for default judgment.

## FACTS

Bonilla hired the law firm in July 2009, on contingency, to represent him as a plaintiff in a case before the Orange County Superior Court. The case went to trial, and a money judgment was entered in Bonilla's favor for $4.3 million in June 2011. In addition, the court awarded him a 20 percent interest in three Santa Ana commercial properties: a market, a liquor store, and a tortilla shop.

Dissatisfied with the outcome of the case, the defendants instituted other legal proceedings to thwart Bonilla's ability to collect or to otherwise make life miserable for him. As a result, Bonilla and the law firm entered into a new contingency agreement,

2

dated November 6, 2011 (the fee agreement). Under the new fee agreement, the law firm would continue to represent Bonilla with respect to the original lawsuit and in the now-proliferating legal proceedings triggered by the judgment in his favor, but on somewhat different terms. Instead of the 25 percent contingency of the original agreement, the law firm would receive one-third of the $4.3 million judgment (and of any recovery from the other proceedings) plus one-third of the future profits and payments from the 20 percent interest in the three commercial properties or a one-time payment of $500,000, whichever he chose. Bonilla also agreed to reimburse the law firm for costs it advanced in the course of the representation.

Bonilla fired the law firm on January 27, 2012. By that time, the law firm had, for all practical purposes, put out all the forest fires started by his defeated opponents. As of February 27, 2012, Bonilla was clear of all the postjudgment proceedings.

The law firm sued Bonilla to collect under the fee agreement on May 2, 2012. Bonilla did not answer, and his default was entered on July 24, 2012. A motion to set aside the default was denied. The law firm moved to enter default judgment in January 2013, supporting the request with two declarations from attorney Raymond Brown and three exhibits: a copy of the fee agreement, a copy of the notice of client's right to arbitration, and a copy of the entry of default form.[1]

A default judgment was entered in February 2013 as follows: $2.2 million in damages, $250,000 in prejudgment interest, $24,733 in attorney fees, and $312 in costs.[2] The court denied an ex parte application to set aside the judgment. Bonilla has appealed from the entry of the default judgment.

---

[1] Raymond Brown signed the November 2011 fee agreement on the law firm's behalf.
[2] These costs must be distinguished from the costs incurred during litigation, while the law firm was still representing Bonilla.

## DISCUSSION

We review the entry of a default judgment for jurisdictional matters and pleading defects. (*Aheroni v. Maxwell* (1988) 205 Cal.App.3d 284, 294.)

"'Substantively, "[t]he *judgment by default* is said to 'confess' the material facts alleged by the plaintiff, i.e., the defendant's failure to answer has the same effect as an express admission of *the matters well pleaded in the complaint*."' [Citation.] The 'well-pleaded allegations' of a complaint refer to ""'all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.'"" [Citations.] [¶] Because the default *confesses* those properly pleaded facts, a plaintiff has no responsibility to provide the court with sufficient evidence to prove them – they are treated as true for purposes of obtaining a default judgment. [Citation.]" (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 281-282, second italics added (*Kim*).)

As we said in *Kim*, or rather reiterated in *Kim*, "'[I]t is the duty of the [trial] court to act as gatekeeper, ensuring that only the appropriate claims get through. That role requires the court to analyze the complaint for itself . . . , ascertaining what relief is sought against each defaulting party . . . . The court must then compare the properly pled damages for each defaulting party with the evidence offered in the prove-up.'" (*Kim, supra,* 201 Cal.App.4th at p. 272.) The performance of this gatekeeper function is all the more important because, although the defendant cannot participate to point out flaws in the evidence, the statute allows the court to award only that amount "as appears by the evidence to be just." (Code Civ. Proc., § 585, subd. (b).) This means the court must cast a critical eye on the evidence presented at the prove-up. (*Heidary v. Yadollahi* (2002) 99 Cal.App.4th 857, 868.)

## I.        Jurisdiction

Before discussing the amount of the default judgment in detail, we must dispose of Bonilla's arguments dealing with the trial court's power to enter a judgment at

all.  On appeal, Bonilla challenges the court's jurisdiction to enter judgment on two grounds.

### A.                    Judicial Reference

Bonilla argues the trial court did not have subject matter jurisdiction with respect to the law firm's claims against him, because the fee agreement contained a judicial reference clause.[3]  Bonilla interprets this clause to deprive the superior court of subject matter jurisdiction from the outset.  "'The principle of "subject matter jurisdiction" relates to the inherent authority of the court involved to deal with the case or matter before it.' [Citation.]" (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 196.)

Bonilla has confused judicial reference with arbitration.  It is possible to go straight to arbitration, bypassing a court entirely, and an arbitrator can assume jurisdiction without having been appointed by a court.  But judicial reference, as the name suggests, requires the involvement of a judge.  It is a statutory procedure by which a judge may appoint a referee "if the court finds a reference agreement exists between the parties." (Code Civ. Proc., § 638.)  The procedure assumes the existence of a lawsuit over which the court has jurisdiction.  (See *Sy First Family Ltd. Partnership v. Cheung* (1999) 70 Cal.App.4th 1334, 1341 [reference involves sending pending case to referee for hearing, determination, and report back to court].)

Under California Rules of Court rule 3.901(a), a referee can be appointed only after a written stipulation is filed with the court or after a motion of one of the parties.  Under rule 3.902, the trial court must issue an order appointing a referee before a

---

[3]  The fee agreement provided in pertinent part, "The parties agree that any and all claims arising out of, under, or relating, to the agreement will be resolved by reference to a retired judge of the Orange County Superior Court or such other person as the parties mutually agree [*sic*] with each side paying the cost of such proceedings equally. . . . The parties expressly waive their rights to have the matter resolved by a jury and/or sitting judge."

referee can begin to decide anything. A court must perforce have subject matter jurisdiction in order to make this appointment.[4]

By agreeing to judicial reference, Bonilla agreed to a court proceeding. To implement and enforce a contract provision requiring judicial reference – as Bonilla advocates – a court would have to have subject matter jurisdiction.

Bonilla seems to be arguing that a trial court could not enter a default judgment – only a referee could do so. The main problem with this argument is that the proceedings never got to the point where the court could consider appointing a referee, because Bonilla did not timely respond to the complaint. Another problem is that a referee cannot enter a judgment of any description. Only a judge can do that.

The lawsuit was instituted when the complaint was filed. The court obtained personal jurisdiction over Bonilla when he was properly served. Unquestionably the court was empowered to adjudicate a claim based on causes of action brought under California law. The case was therefore pending before the court. To activate the judicial reference provision of the fee agreement, Bonilla had to appear and either stipulate or make a motion. His failure to do so had no effect on the court's subject matter jurisdiction (cf. *Aheroni v. Maxwell, supra,* 205 Cal.App.3d at p. 294 [attorney's failure to give notice of right to arbitration did not deprive court of jurisdiction]) and meant the case was properly before the court.

### B. Failure to State a Cause of Action

A default confesses all properly pleaded facts, and the plaintiff is not required to prove them. If, however, a complaint fails to state a cause of action, a default judgment cannot stand, because the trial court lacks jurisdiction to enter a default judgment on a non-existent cause of action. (*Kim, supra,* 201 Cal.App.4th at p. 282.)

---

[4] Moreover, a court may refuse to appoint a referee, despite an agreement between the parties to have their disputes decided by judicial reference. (*Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 544-545.)

The law firm's complaint alleged three causes of action: breach of contract, account stated, and declaratory relief.[5] A cause of action for breach of contract requires the plaintiff to plead a contract, plaintiff's performance or excuse for failure to perform, breach by the defendant, and resulting damages. (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1489.) The law firm's complaint alleged all of these elements. A declaratory relief cause of action requires allegations of an actual present controversy over a proper subject. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79; see also Code Civ. Proc., § 1060 [declaratory relief available to "[a]ny person interested . . . under a contract . . . in cases of actual controversy relating to the legal rights and duties of the respective parties"].) The complaint sufficiently alleged an actual controversy about the legal rights and duties of the law firm and Bonilla under the fee agreement.

Bonilla argues that, having been fired, the law firm could recover its fees only in quantum meruit for the reasonable value of its services. Because it failed to allege a cause of action for quantum meruit, the law firm could not obtain a default judgment.

The allegations of the complaint, which, as Bonilla defaulted, do not have to be proven, established that the law firm fully performed its part of the fee agreement before being discharged. It is therefore entitled to the "negotiated fees as specified in the contract." (*Joseph E. Di Loreto, Inc., v. O'Neill* (1991) 1 Cal.App.4th 149, 154 (*O'Neill*).) Unlike an attorney discharged before full performance, one who has fully performed may sue and recover on the contract. (*Id.* at pp. 157-158.)

*O'Neill* closely resembles this case. In *O'Neill*, the lawyer represented the client on contingency in a personal injury action against a bus line. The client prevailed

---

5      The complaint also included "causes of action" for constructive trust, injunctive relief, and appointment of a receiver. All of these are remedies, not causes of action. (See *Kim, supra,* 201 Cal.App.4th at p. 277, fn. 4 [constructive trust]; *County of Del Norte v. City of Crescent City* (1999) 71 Cal.App.4th 965, 973 [injunction]; Code Civ. Proc., § 564 [appointment of receiver].)

and was awarded a substantial judgment. The contingency fee agreement did not require the lawyer to continue representing the client through an appeal. After entry of judgment, the client fired the lawyer and obtained new counsel. Although the bus line filed a notice of appeal, the appeal was later dismissed. The client settled with the bus company, and the lawyer sued for his share of the recovery plus costs advanced. (*O'Neill, supra,* 1 Cal.App.4th at pp. 153, 154.) The reviewing court held he was entitled to the fees per the contract; it was not necessary that the client actually receive the funds from the bus line *while he represented her* in order for him to recover. (*Id.* at p. 158.)

By defaulting, Bonilla has "confessed" that the law firm in this case fully performed all its obligations. It is therefore entitled to compensation under the terms of the fee agreement.

We address two more arguments Bonilla has made with respect to failure to state a cause of action.[6] He argues the law firm lacks standing to bring a claim based on the fee agreement, apparently because the composition of the law firm had changed between the time it entered into the fee agreement in November 2011 and when it filed suit in May 2012. We reject this argument for two reasons.

First, nothing in the record supports it. Bonilla filed a request for judicial notice on July 24, 2013, including materials regarding the Aguilera Law Group, which represented the law firm at least as of July 24, 2012, when the request to enter Bonilla's default was filed. We denied the request for judicial notice without prejudice, pending a showing of relevance to the issues on appeal, on August 27, 2013. No such showing was ever made. Nevertheless, Bonilla's opening brief, filed September 19, 2013, refers repeatedly to materials in the denied request for judicial notice, in direct violation of California Rules of Court rule 8.204(a)(2)(C), which restricts the summary of significant

---

[6]     We do not here address the remaining two arguments. Constructive trust is not a cause of action, so whether the law firm failed to state such a cause of action is irrelevant. We deal below with Bonilla's argument about fulfillment of the condition for the law firm's entitlement to its fees.

8

facts to "matters in the record." We disregard any "facts" for which the record provides no support. (See *McOwen v. Grossman* (2007) 153 Cal.App.4th 937, 947.)

Second, even if we were to credit Bonilla's assertion that some members of the law firm had left to start their own enterprise before the complaint was filed, the law firm's standing to sue would not be affected. A limited liability partnership such as the law firm is an entity separate from the people who make it up.[7] (Corp. Code., § 16201.) It has standing to sue in its own name. (Code Civ. Proc., § 369.5, subd. (a), Corp. Code, § 16307, subd. (a); see also *Wallner v. Parry Professional Bldg., Ltd.* (1994) 22 Cal.App.4th 1446, 1449.)

The law firm, not its members individually, was a party to the fee agreement. The law firm is entitled to relief for failure to pay for its services. (*Color-Vue, Inc. v. Abrams* (1996) 44 Cal.App.4th 1599, 1604 [standing refers to right to relief in court].) It therefore has standing to sue Bonilla for its fees, regardless of who composed the law firm when it filed the complaint.

Bonilla also argues the complaint fails to state a cause of action because the complaint lacks allegations to rebut the presumption of undue influence. To support his argument, Bonilla relies on *Cooley v. Miller & Lux, Inc.* (1914) 168 Cal. 120 (*Cooley*), which held that, by entering into a second – less onerous – fee agreement with his clients, an attorney had obtained an advantage, and "the presumption of undue influence attached to the transaction." (*Id.* at p. 131.)

*Cooley* was decided at a time when former Civil Code section 2235 provided that all transactions between a trustee and a beneficiary during the existence of the trust "are presumed to be entered into by the latter without sufficient consideration, and under undue influence." (See *Rader v. Thrasher* (1962) 57 Cal.2d 244, 249.) This

_____

[7] Limited liability partnerships are governed by Corporations Code section 16951 et seq., part of the Uniform Partnership Act of 1994.

9

statute was held to apply to the attorney-client relationship. (*Ibid.*) The statute has since been both amended and repealed.

The corresponding statute is now Probate Code section 16004, subdivision (c), which provides: "A transaction between the trustee and a beneficiary which occurs during the existence of the trust or while the trustee's influence with the beneficiary remains and by which the trustee obtains an advantage from the beneficiary is presumed to be a violation of the trustee's fiduciary duties. This presumption is a presumption affecting the burden of proof. This subdivision does not apply to the provisions of an agreement between a trustee and a beneficiary relating to the hiring or compensation of the trustee." The last sentence of the subdivision "specifically exempts from the presumption of undue influence any agreement relating to the 'hiring or compensation' of the trustee/attorney. This exemption has been held to apply 'even where there is a pre-existing attorney-client relationship.' [Citations.]" (*Ramirez v. Sturdevant* (1994) 21 Cal.App.4th 904, 917; see also *Walton v. Broglio* (1975) 52 Cal.App.3d 400, 403-404.) It was therefore unnecessary for the law firm to include allegations in the complaint negating the presumption of undue influence in order to state a cause of action.

The law firm has stated a cause of action for breach of the fee agreement. It is not limited to recovery in quantum meruit. The trial court had the jurisdiction to enter the judgment against Bonilla.

**II.        Amount of the Default Judgment**

Code of Civil Procedure section 585, subdivision (b), provides, in pertinent part: "[T]he clerk, upon written application of the plaintiff, shall enter the default of the defendant. The plaintiff thereafter may apply to the court for the relief demanded in the complaint. The court shall hear the evidence offered by the plaintiff, and shall render judgment in the plaintiff's favor for that relief, not exceeding the amount stated in the complaint, in the statement required by Section 425.11, or in the statement provided for by Section 425.115, as appears by the evidence to be just. If the taking of an account, or

10

the proof of any fact, is necessary to enable the court to give judgment or to carry the judgment into effect, the court may take the account or hear the proof, or may, in its discretion, order a reference for that purpose. . . ."

The amount of the default judgment against Bonilla consisted of $2,218,387 in contract damages, $250,404 in prejudgment interest, $24,733 in attorney fees, and $312 in costs to obtain the judgment. Bonilla does not dispute the amount of the costs.

### A.       Damages

The law firm computed its damages based on the November 2011 fee agreement, and Bonilla's awards in the action in which the law firm had represented him and from which he emerged with a substantial judgment in June 2011. The fee agreement provided that the law firm's contingency payment would be 33.3 percent of all sums Bonilla received from the lawsuits, including attorney fees (first element), and either one-third of the future profits and payments from any non-monetary recovery or a one-time payment of $500,000, at his discretion (second element). If the court awarded Bonilla attorney fees in an amount greater than the contingency payment (first and second elements), the law firm would get that amount instead. The law firm was also entitled to be reimbursed for its litigation costs (third element).

In the complaint, the law firm alleged that Bonilla owed it $1,441,782, which equaled one-third of the monetary judgment he was awarded in the lawsuit (first element); $79,552, which was one-third of Bonilla's prejudgment interest award (part of the first element); $500,000 from the non-monetary recovery (second element); and $197,052 in litigation costs (third element); for a total of $2,218,387. This was the amount entered as damages in the default judgment.

### 1.  First element – percentage of monetary award

The fee agreement entitled the law firm to a third of "all sums *received* by [Bonilla] on [Bonilla's] behalf relating to the above-named cases from any and all

11

sources whatsoever (including but not limited to fees *received* in satisfaction of judgment or in settlement of disputed claims) including attorney's fees." (Italics added.) The complaint contained no allegation that Bonilla had *received* anything from the judgment awarded to him. Likewise, the evidence the law firm submitted to obtain the default judgment did not include evidence that Bonilla *received* anything, either in compensatory damages or in prejudgment interest.[8] The clear intent of the fee agreement was that the law firm would be paid one-third of the money Bonilla actually collected, not that he would pay his lawyers regardless of whether he himself collected the judgment. That is the nature of a contingency agreement.

As any lawyer knows, a monetary award often signals the start of a long and arduous battle to collect, one that may be only partially successful or even lost altogether. The law firm's complaint contains no allegation that Bonilla collected anything, so he has not "confessed" the fulfillment of this condition. The law firm did not submit sufficient evidence to prove its entitlement to compensatory damages.

"Ordinarily when a judgment is vacated on the ground the damages awarded exceeded those pled, the appropriate action is to modify the judgment to the maximum amount warranted by the complaint." (*Ostling v. Loring* (1994) 27 Cal.App.4th 1731, 1743.) In this case, however, we cannot determine the maximum amount warranted by the complaint, because nothing was pleaded or proved up as to the amount Bonilla *recovered* in damages and prejudgment interest. We therefore return the matter to the trial court for sufficient evidence on this subject, should the law firm wish to submit it.

### 2. Second element – non-monetary award

The second element of the contingency is the law firm's recovery from non-monetary awards to Bonilla. In this case, the law firm alleged he was awarded a 20

---

[8] Oddly enough, the evidence did not even include a copy of the June 2011 judgment, awarding Bonilla $4.3 million plus 20 percent of the commercial properties.

12

percent interest in certain properties. The fee agreement specified that the law firm could collect either one-third of the future profits and payments from these properties or, at Bonilla's discretion, a one-time payment of $500,000.[9] In the default prove-up, the law firm selected the one-time payment of $500,000, and the trial court included that amount in the total judgment. The law firm's complaint contained no allegation regarding Bonilla's election under this part of the fee agreement.

The question becomes whether anyone else – namely, the law firm or the court – can choose for Bonilla. Left to his own devices, Bonilla would most likely choose the alternative that would work to his advantage. If he thought the commercial properties would be quite profitable in the future, he would probably pay the law firm the lump sum. By contrast, if he thought future payments from the properties would be low, he would very likely keep his $500,000 and let a third of these payments trickle into the law firm's coffers over time.[10] Under the fee agreement, he is entitled to choose, but, having defaulted, he cannot come into court to make his choice.

The law firm's cause of action for declaratory relief permits the trial court to exercise its equitable powers to break this logjam. The trial court can issue an order to Bonilla requiring him to choose, within a reasonable time, which option he prefers – the one-time payment or the payments over time. If Bonilla fails or refuses to choose within the time limit – which must permit him enough time to forecast what the future returns from the property are likely to be – then the court can, upon the presentation of sufficient evidence from the law firm, make the election for him. (See *Bertero v. National General*

---

[9] "In the event that this matter is resolved on terms that include non-monetary recovery and/or the potential for future monetary recovery, including but not limited to [Bonilla's] obtaining a partnership interest and receiving a share of the future profits in the El Toro Market and related businesses, [the law firm] shall be entitled to one-third of the future profits and payments resulting from the non-monetary recovery on an ongoing basis (such fees to be paid within 10 days of [Bonilla's] receipt thereof for as long as [Bonilla] continues to receive monetary recovery pursuant to any settlement or judgment in this action) or a one-time payment of $500,000 at [Bonilla's] discretion."

[10] The law firm submitted no evidence to the court as to which alternative would be more to Bonilla's benefit.

13

*Corp.* (1967) 254 Cal.App.2d 126, 145-146 [defendant in declaratory relief action ordered either to reinstate stock options or pay money damages].) If Bonilla refuses completely to cooperate, the law firm would be entitled to conduct a judgment debtor examination in order to obtain the information necessary for the court to decide which option would be fairer to Bonilla.

### 3. Third Element – litigation costs

With respect to litigation costs, the fee agreement provided, "At all stages of the proceedings, [Bonilla] agrees to pay all the necessary costs, including but not limited to court costs, jury fees, charges for depositions, investigation costs and expert fees plus any other costs which may be incurred in the proper presentation and trial of said action. [The law firm] may advance, on an item by item basis, these costs on behalf of [Bonilla], in which case such costs are to be reimbursed either directly by [Bonilla] or disbursed directly out of the proceeds of the action from [Bonilla's] share of those proceeds."

Unlike the promise to pay a percentage of his recovery from any judgment or settlement, Bonilla's promise to reimburse the law firm for litigation costs did not depend on his collecting anything. He could pay this element either directly or from the proceeds of any award, but he had to pay.[11] The intent here is different – he agreed to reimburse the law firm for costs whether or not he collected anything from his adversaries.

Although the law firm's ability to recover its fees depends on some proof of Bonilla's recovery from the judgment, the same does not apply to litigation costs. Attorney fees and costs are separate items. (See *Ripley v. Pappadopoulos* (1994) 23 Cal.App.4th 1616, 1626; *Tasker v. Cochrane* (1928) 94 Cal.App. 361, 366 [in absence of

---

[11] Rule 4-210 of the Rules of Professional Conduct prohibits lawyers from paying prospective or existing clients' personal or business expenses, but excepts "advancing the costs of prosecuting or defending a claim or action or otherwise protecting or promoting the client's interests, the repayment of which may be contingent on the outcome of the matter."

special agreement to the contrary, client bound to repay attorney for expenses of carrying on litigation].)  Of course, the litigation costs must be reasonably incurred – the client does not write the attorney a blank check for costs by agreeing to repay them.  (See Rule Prof. Conduct, rule 4-210(A)(3) ["Such costs . . . shall be limited to all reasonable expenses of litigation or reasonable expenses in preparation for litigation or in providing any legal services to the client."].)

Once again the evidence of the amount of litigation costs was insufficient.  "'[T]he default of the defendant merely admits that something is due but does not admit that the amount prayed for constitutes that amount.'"  (*Lynch v. Bencini* (1941) 17 Cal.2d 521, 526.)  Code of Civil Procedure section 585, subdivision (d), permits evidence of the amount of damages to be submitted by affidavit, but "[t]he facts stated in the affidavit or affidavits shall be within the personal knowledge of the affiant and shall be set forth with particularity, and each affidavit shall show affirmatively that the affiant, if sworn as a witness, can testify competently thereto."

The evidence about litigation costs consisted solely of a statement in a lawyer's declaration that Bonilla owes the law firm "$133,832.41 (costs paid on behalf of [Bonilla]) and $63,220.30 (costs paid to [Bonilla])."  Nothing in the declaration indicates any foundation for these amounts or facts showing how the declarant knows what the costs are.  There are no copies of bills, invoices, receipts, or other documents to substantiate nearly $200,000 in litigation costs.

The only evidence of the attorney's competence as a witness is the conclusory statement "I have personal knowledge of the following facts and if called as a witness in this matter could and competently [*sic*] testify thereto."  The recitation of this formula, in the absence of facts showing a basis for personal knowledge, is not sufficient foundation.  (*Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 692, fn. 1; *Snider v. Snider* (1962) 200 Cal.App.2d 741, 754.)

15

The evidence of the amount of litigation costs is insufficient. The trial court must have evidence based on personal knowledge of the amount of costs and their reasonableness in order to make an award that "appears by the evidence to be just." (Code Civ. Proc., § 585, subds. (b), (d).)

If the amount of the litigation costs is not to be established through properly authenticated documents, then the declarant must (1) explain how he acquired the knowledge to state what the costs are and (2) provide a breakdown at least by category (e.g., deposition transcripts, filing fees, expert fees, etc.) of the kinds of things on which the money was spent. Recitation of lump sums is not enough. Likewise, the declaration must address the issue of reasonableness of the costs incurred.

Nothing in the declaration submitted by the law firm supports either the declarant's personal knowledge or his ability to testify competently about the amount of litigation costs, let alone their reasonableness. This element of damage too must be recalculated after the court receives sufficient evidence of both amount and reasonableness.

**B.**        **Prejudgment Interest**

Bonilla objects to the award of prejudgment interest as part of the default judgment, claiming, in effect, that the fee agreement constitutes a waiver of the law firm's ability to collect prejudgment interest as part of this judgment.[12] He asserts that the integration clause in the fee agreement precludes the law firm from extracting from him anything other than the sums mentioned in the contract itself.

---

[12] This prejudgment interest must be distinguished from the prejudgment interest Bonilla was awarded as part of the June 2011 judgment.

16

Entitlement to prejudgment interest is set by statute.[13] It is not dependent on provisions in a contract, but is awarded as a matter of law, once the conditions for such an award have been established. (See *Leff v. Gunter* (1983) 33 Cal.3d 508, 519.) In the absence of a specific waiver of prejudgment interest in the fee agreement, the law firm would be entitled to interest on "damages certain or capable of being made certain by calculation" that have vested on a particular day or interest on unliquidated damages in the court's discretion. (Civ. Code, § 3287.)

Because the underlying amount of the damages must be reevaluated, the trial court will have to look again at the prejudgment interest ($250,404) as well. When it does so, it will keep in mind the difference between an award under Civil Code section 3287, subdivision (a), and one under Civil Code section 3287, subdivision (b).

Civil Code section 3287, subdivision (a) requires evidence of damages "certain or capable of being made certain by calculation" as of a particular date, and interest is calculated from that date. "'[The] certainty requirement of [Civil Code] section 3287, subdivision (a) has been reduced to two tests: (1) whether the debtor knows the amount owed or (2) whether the debtor would be able to compute the damages.' [Citation.]" (*Polster, Inc. v. Swing* (1985) 164 Cal.App.3d 427, 434-435.) If the contract damages are unliquidiated, however, the court must exercise its discretion as to when interest starts to run, and it may not be earlier than the date the complaint was filed, in this case May 2, 2012. (See Civ. Code, § 3287, subd. (b).)

---

[13] Civil Code section 3287 provides: "(a) A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day, except when the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state. [¶] (b) Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed."

17

As of now, there is no evidence in the record as to when the damages became certain – if ever.[14] Any award of prejudgment interest must, like the award of damages, appear by the evidence to be just. There must be evidence to support not only the amount but the starting date as well.

### C. Attorney Fees

The fee agreement provided, "The prevailing party shall be entitled to recover the costs of the reference and attorney's fees." The Superior Court of Orange County, Local Rules, rule 366 sets a fee schedule for default judgments. The trial court consulted this schedule when it awarded the law firm's attorney fees.

Because the amount of the default judgment must be reexamined in light of the absence of evidence that Bonilla collected anything from the judgment, the attorney fees will have to be reexamined as well. The award of fees must be based on the amount the law firm can show Bonilla actually collected, not on what he was awarded.

Bonilla asserts the law firm cannot recover attorney fees because it represented itself in the default judgment proceedings. (See *Trope v. Katz* (1995) 11 Cal.4th 274, 282-283.) Although the law firm represented itself when it filed the complaint, the default proceedings were handled by another firm. There is no evidence in the record that the law firm represented itself in obtaining the default or the default judgment. The law firm is entitled to attorney fees assuming it can make the requisite showing of recovery under the contract.

---

[14] The law firm picked December 21, 2011, as the date from which interest should start to run, but gave no explanation as to why that date had any significance.

18

### III.     Rule Violation

Finally, Bonilla argues the fee agreement is unenforceable because it violates California State Bar Rules of Professional Conduct, rule 3-300.[15] As the court held in *Plummer v. Day/Eisenberg* (2010) 184 Cal.App.4th 38, 49, a contingency fee agreement does not have to comply with rule 3-300 to create at attorney lien.  The reasons for this exemption bear on the issues in this case:  "(a) the attorney and client have agreed that the attorney's fee will be limited to a percentage of, and derived only from, a successful recovery created by the attorney's work; (b) the attorney and client share the risk of a recovery; (c) any fee the attorney earns or receives is delayed until the client obtains a recovery, usually at the very end of the representation; and (d) the recovery often represents the only source of funds from which the attorney can ever be paid."  (*Ibid.*)  The law firm need not comply with the rule because it shares with the client a risk of nonrecovery.  The client's default does not erase this risk.

### DISPOSITION

The default judgment is reversed, and the matter is remanded to the trial court for additional proceedings with respect to (1) the law firm's entitlement to a percentage of the amounts Bonilla has actually collected from the $4.3 million monetary damages awarded in the underlying lawsuit and from the other proceedings covered by the fee agreement; (2) issuing an order requiring Bonilla to elect whether to make the one-time payment of $500,000 or pay over time from future profits and, if Bonilla refuses to choose within a reasonable time, conducting further proceedings to make this election; (3) litigation costs as to which the law firm is entitled to reimbursement under the fee

---

[15]     Rule 3-300 of the Rules of Professional Conduct provides:  "A member shall not enter into a business transaction with a client; or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, unless each of the following requirements has been satisfied: [¶] (A) The transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which should reasonably have been understood by the client; and [¶] (B) The client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice; and [¶] (C) The client thereafter consents in writing to the terms of the transaction or the terms of the acquisition."

agreement; (4) prejudgment interest in this action; and (5) attorney fees awardable in a default judgment. The default judgment is affirmed as to its costs. The parties are to bear their own costs on appeal.


BEDSWORTH, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


MOORE, J.

20